# Broomall's Estate.

*Guardian and ward—Principal and surety—Will—Decedent's estate.*

Where a testator has given the one third of the income of his estate to his wife for life, and the residue of the income and the whole principal of the estate after the death of the wife to his children, and the whole estate has come into the possession of the guardian of the children, the surety of the guardian will not be liable for the loss by the guardian of the third held for the life of the wife where it appears that after all the children became of age they receipted to the guardian for two thirds of the estate, and they and the wife of testator entered into an agreement with the guardian by which the latter was to retain in his possession the remaining third of the estate, pay the income therefrom to the wife during her life, and the principal to the children after her death.

Argued Nov. 22, 1904. Appeal, No. 55 Oct. T., 1904, by Ella V. Walter and W. Frank Walter, from decree of O. C. Del. Co., dismissing exceptions to adjudication in Estate of George Broomall, deceased. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Exceptions to adjudication.
The facts appear by the opinion of the Superior Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*George T. Butler*, for appellants.—The policy of the law is to see that such fiduciary relations are faithfully and honestly carried out to their fullest extent, and " settlements between guardian and ward, soon after the latter becomes of age and before opportunity exists to become familiar with the condi-

tions of the estate, are to be regarded with a jealous eye: " Hawkins's Appeal, 32 Pa. 263 ; Kinter's Appeal, 62 Pa. 318.

*William B. Broomall*, with him *Henry L. Broomall*, for appellee.—A guardian as such is not bound by the receipt of moneys after the arrival of his ward at full age : Crowell's Appeal, 2 Watts, 295.

The difficulties attending a guardian's possession of money as to which he has undertaken to pay the interest to a beneficiary for life and as to which he is not responsible to pay over to his wards until the death of the life beneficiary, are adverted to in a discussion by Judge CLAYTON of Thatcher's Appeal, 1 Del. Co. Rep. 321.

We have not been able to find any authority upon this point, but we submit that it is more logical and less productive of complications in its application, to hold that a guardian can not receive, strictly as such, and in such manner as to bind his. sureties, money which may not be payable until years after the majority of his wards and as to which he assumes to act in the office of a trustee to pay the interest to a life beneficiary.

The agreement by which the money was allowed to remain in the hands of Mr. Howard established the relation of debtor and creditor between him and them : Commonwealth v. Shryock, 15 S. & R. 69 ; Bull v. Towson, 4 W. & S. 557.

Such a change of the relation between the guardian and his late wards, by which the payment of the money is arranged to be deferred until a future time and by which their interests in their former estate were changed, must needs operate as a release of the sureties upon the guardian's bond where the transaction has taken place without the knowledge and consent of the sureties: Chandler v. Birkholm, 44 N. J. Eq. (17 Stewart) 554.

OPINION BY PORTER, J., March, 14, 1905:

The appellants presented a claim against the estate alleged to be founded on the liability of the decedent as surety upon the bond of Henry C. Howard, the former guardian of the claimants. Henry C. Howard was appointed guardian of the appellants by the orphans' court of Delaware county on April 7, 1879, and on May 12, following duly filed his bond, upon

which the decedent and another were sureties, conditioned as prescribed by the Act of March 29, 1832, P. L. 190, section 8. Howard subsequently received, from the representatives of a former guardian, a considerable sum of money, supposed to be the property of his wards; Howard filed, on July 3, 1884, an account as guardian, showing a balance in his hands of $9,869.18. On March 30, 1885, the guardian settled with his wards, paying them two thirds of the money shown by his account to be in his hands, and two thirds of the income received from said funds down to the time of said settlement. The appellants, at the time of this settlement, executed and delivered to Howard a written instrument under seal, in which they acknowledged the receipt, by each of them, of the "sum of $3,289.72, being our shares of the principal of the estate in the hands of our said guardian presently payable to us, as per account of our said guardian filed in the register's office of the county of Delaware, on July 3, 1884, confirmed by the orphans' court of said county; and also the further sum of $46.25 each, being our respective shares of the balance of the income in the hands of said guardian up to April 1, 1885, as per his account of the same this day rendered to us. In consideration of which we do hereby severally for ourselves, all and each of our executors, and adminstrators, release, exonerate and forever discharge the said Henry C. Howard, guardian as aforesaid, his heirs, executors and administrators from the said sum so paid to us on account of our respective shares of the estate in his hands and of and from all suits, actions, accounts and demands therefor, leaving in the hands of said guardian the principal sum of $3,289.72 payable to us upon the decease of our mother, Lydia Townsend, the income whereof is payable to her during her natural life." Lydia Townsend, the mother of the appellants and former widow of Jesse Walter, from whom the inheritance had come, at the same time executed a written instrument under seal, consenting to the payment of the sums above specified to her children, and releasing Howard from the payment of the same "and from any further account or accounts therefor, or the income therefrom." While it is true that private settlements between a guardian and a ward who has recently come of age are watched with great jealousy, when a guardian acts faithfully in the

settlement, concealing nothing, his sureties are no more to be plundered than is an unfaithful trustee to be permitted to steal his ward's estate: Hawkins's Appeal, 32 Pa. 263 ; Kinter's Appeal, 62 Pa. 318. There is in this case no evidence whatever tending to establish that the amount of money for which the guardian ought to have accounted was not precisely what it was at the time by the parties understood to be. There is not a scintilla of evidence from which it could be inferred that the guardian did not there and then have the money ready to pay over to the persons entitled to receive it. The agreement as to the third which was to remain, under the arrangement entered into by the parties, in Howard's hands, the income to be paid to the widow during her life, and the principal to these appellants upon the death of their mother, related entirely as to the manner in which that fund was to be dealt with in the future. If the money was absolutely the property of the wards, as the account of the guardian indicated, then those wards having arrived at full age were competent to make any arrangement as to the future disposition of the fund which to them was satisfactory. They might have directed the payment of the principal of the one third to their mother. They saw fit to enter into an agreement, under the provisions of which the fund was to remain in the hands of Howard during the life of their mother, the income being paid to her, and which postponed their right to receive the principal until after her death. This arrangement put it out of the power of the appellants, as well as of the sureties of Howard, to call upon the guardian to account for the fund as guardian, in the orphans' court: Commonwealth v. Shryock, 15 S. & R. 69 ; Bull v. Towson, 4 W. & S. 557. If this third of the estate had, prior to this settlement, been held by Howard as the guardian of the appellants, then the agreement to which they were parties changed the relation in which all those interested stood to the fund, and the character in which Howard held it.

It seems, however, to be an undisputed fact in this case that the fund which was by the account of the guardian shown to be in his hands, was not property to the possession of which either he or his wards were presently entitled, although the property had found its way into the hands of the former guardian and had by his representatives been handed over to

Howard. The parties seem to agree upon the source from which the fund came, and the interests to which it is subject. The fund was derived from the sale of the real and personal estate of Jesse Walter, which he had devised and bequeathed to his executors to be sold, and directed that the annual income of the proceeds should be equally divided between his wife and two children "for and during the term of the natural life of my said wife." After the death of the widow the principal was to be paid to the children. The executors had for some reason paid the entire fund to Frederick Fairlamb, the first guardian of the appellants, who, having died, his representatives paid it to Howard, his successor in the office of guardian. The parties here are agreed that the whole fund in the hands of the guardian, when his wards became of age, was subject to the trust, to continue during the life of the widow, created by the will of Jesse Walter. The widow would have been entitled, upon giving security, to the possession of the fund, or a trustee might have been appointed to whom it should be paid over: Act of February 24, 1834, P. L. 70, section 49; Act of May 17, 1871, P. L. 269. The guardian having received this fund by virtue of his office, could have been required to account and pay over the money to the person lawfully entitled to its custody. The bond upon which George Broomall was surety was conditioned for the faithful performance of the duties of guardian, by Howard, and did not contemplate the continuance of the latter as a trustee, by a voluntary arrangement of those in interest, to which the surety was not a party, which was to continue for many years after the wards had become of age. The will imposed no restraint upon the alienation of the interests in the trust fund which it created, the interests were all vested, and the parties sui juris. It was entirely competent for those beneficially interested to agree that the fund might be distributed. The widow might have released her interest in the income and directed that the entire fund should be paid to her children, or the children might have given the corpus of the estate to their mother. The mother and children did agree that the entire fund should be disposed of in a manner which terminated the trust created by the will of Jesse Walter. Under the arrangement entered into by the parties the interest

of the widow in two thirds of the fund ceased, and that proportion of the principal was paid over to the children, the appellants; as to the remaining third, the interest of the children in the income ceased, all of which was to be paid to the widow during her life, and upon her death the principal thereof to the children. The parties might have agreed that this fund should be paid to the widow, upon her giving security, or they might have selected some other trustee; but they agreed that this one third of the fund should remain in the hands of Henry C. Howard, during the life of the widow. The money thus left in Howard's hands was subject to a trust different in terms from that originally created by the will of Jesse Walter. He did not hold the money upon the conditions which had been impressed upon it when he received it as guardian, but subject to conditions which had been voluntarily created by his wards after they had arrived at full age. Howard held this third under a new trust created by the arrangement between the widow and children. He continued to so hold it for seventeen years after the time when in contemplation of law his duties as guardian ceased, when in 1902 the widow died, and the trustee was found to be insolvent. The bond upon which Broomall became surety did not contemplate the assumption of duties by his principal under a trust created by the wards after they had attained full age and which was to continue for an indefinite period of time. The relation of the parties beneficially interested to the fund and the conditions of the trust had been changed by the voluntary act of the appellants after they were fully competent to contract for themselves, and the liability of the surety was at an end.

The decree is affirmed and the appeal dismissed at costs of the appellants.