[S. F. No. 9326. In Bank.—May 12, 1921.]

In the Matter of the Estate of ABRAHAM GARTENLAUB, (Otherwise Known as A. GARTENLAUB), Deceased. 'ALICE G. B. GARTENLAUB, Appellant, v. UNION TRUST COMPANY OF SAN FRANCISCO, a Corporation, as Trustee, etc.; SARAH FOX et al., Respondents.

**[1]** TRUSTS — PURCHASE OF SECURITIES — PAYMENT OF PREMIUM — CHARGING OFF PREMIUM—RULE.—In the absence of a clear direction in the will to the contrary, where investments are made by a testamentary trustee, the principal of the trust funds must be maintained intact from loss by payment of premium on securities having only a definite term to run, and such premium should be charged off against the income instead of against the principal.

**[2]** ID.—DEDUCTION OF PREMIUM FROM INTEREST—ACCUMULATION OF INCOME—SECTIONS 723, 724, CIVIL CODE.—The deduction from interest of the amount paid as premium by a testamentary trustee in the purchase of securities is not a violation of sections 723

---

1. Liability as between life tenant and remainderman for premium paid for bonds, note, 4 **A. L. R.** 1249.

Personal liability of trustee for losses to trust estate from investments, note, 44 **L. R. A. (N. S.)** 873; for loss of trust funds deposited in bank, note, **Ann. Cas.** 1915C, 50.

and 724 of the Civil Code, prohibiting accumulations of income except during minority and for the benefit of the minor, as a portion of the interest on the bonds is in reality return of a part of the principal invested therein to the *corpus* of the trust estate and the trustee is not withholding any part of the *income* for the purpose of investing it as new capital.

[3] ID.—EXPENSES OF TRUST—REIMBURSEMENT OF TRUSTEE.—It is a general rule that trustees are entitled to reimbursement for expense incurred in good faith in the execution of the trust.

[4] ID.—LITIGATION — EXTRAORDINARY SERVICES — ATTORNEYS' FEES.— Where litigation becomes necessary to remove a doubt or ambiguity so as to insure the correct administration of the trust, the expense is an extraordinary charge which, unless otherwise provided by the testator, should be borne by all the parties, and therefore should be charged against the principal.

[5] ID.—ORDINARY EXPENSES—ATTORNEYS' FEE.—Expenses in regard to matters concerning the ordinary management of a trust, such as the preparation of annual accounts, are usually payable from income, and attorneys' fees incurred in such matters should be charged to income.

APPEAL from an order of the Superior Court of the City and County of San Francisco settling an annual account of a testamentary trustee. John T. Nourse, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

Garret W. McEnerney for Appellant.

Norman A. Eisner, Heller, Powers & Ehrman, Samuel S. Stevens and Heller, Ehrman, White & McAuliffe for Respondents.

LENNON, J.—Objections interposed to the settling of an annual account of a testamentary trustee form the basis of the present appeal. The decedent, Abraham Gartenlaub, who died June 1, 1914, devised and bequeathed the greater part of his estate in trust to the Union Trust Company of San Francisco and empowered the trustee to convert into money the estate thus received and invest the same in certain described bonds. By the terms of the will the trustee was directed to pay to Alice G. B. Gartenlaub, the wife of the testator, monthly, during her lifetime, three-fourths of the "entire net income, revenue and profit of every kind arising

from said estate in said month in any way whatever." The said Alice Gartenlaub appeals from an order of the superior court of San Francisco settling the fourth annual account of the trustee. Sarah Fox, who is the sister of the testator and the life tenant in respect to the remaining one-fourth of the "net income, revenue and profit," her two children, Harry and Gussie Fox, who are the remaindermen under the trust, and the trustee are the respondents. Appellant contends that, in the account attacked, the trustee has erroneously deducted certain sums from "income" and credited them to "principal."

Pursuant to the provisions of the will, the trustee has invested funds of the trust estate in certain bonds which it purchased at a premium. Obviously the amount of the premium cannot be collected from the obligor when the bonds mature, for the latter is liable only for the face value thereof. Consequently, if the bonds are retained by the trustee until maturity, the principal of the trust estate will be depleted by an amount equal to the premium paid. For the purpose of preventing a shrinkage of the principal in this manner, the trustee has, on each coupon date, deducted a portion of the interest collected on the bonds and credited the same to principal. It is calculated that at maturity the sum of the amounts thus taken from interest and credited to principal will equal the premium originally paid for the bonds. This deduction from interest is assigned by appellant as an unwarranted diminution of the income of the life tenant.

Whether a premium paid for securities purchased by a trustee for a trust estate should be charged against the principal or the income of the estate has never been decided in California and upon this question we find the decisions in the other states in sharp conflict. Whatever view may be accepted, it is clear that some definite rule of action must be prescribed by this court and departures therefrom permitted only where the creator of the trust has given a clear and unmistakable direction to the contrary of that rule. The determination of the course to be pursued by trustees in such cases cannot be made wholly dependent upon the peculiar circumstances of each case as it arises, as has been attempted in some states. (*McLouth* v. *Hunt*, 154 N. Y. 179, [39 L. R. A. 230, 48 N. E. 548]; *Hemenway* v. *Hemenway*, 134 Mass. 446, 452; *Shaw* v. *Cordis*, 143 Mass. 443, [9

N. E. 794].) Such attempt has proven unsatisfactory in these states for the reason that, in the majority of cases, the creator of the trust fails to make specific provision for the contingency in question and, therefore, if the duty of the trustee in this particular be governed entirely by the intention to be ascertained from the instrument creating the trust or the circumstances surrounding the execution of that instrument, "no trustee will know how to safely act, and a question constantly arising in the administration of estates will be involved in great confusion and be the cause of great litigation." (*In re Stevens*, 187 N. Y. 471, [10 Ann. Cas. 511, 12 L. R. A. (N. S.) 814, 80 N. E. 358]; *New England Trust Co.* v. *Eaton*, 140 Mass. 532, [54 Am. Rep. 493, 4 N. E. 69].)

The decisions which hold that a premium must be charged wholly to the principal of the trust estate, which is the rule contended for by appellant, are based largely upon the reason that a premium is paid to secure safety of investment, as well as high interest, and that, therefore, the premium is for the benefit of the remainderman as well as the life tenant. There is also the argument that there is a possibility that the bonds may be sold before maturity and, owing to fluctuations in market value, may, when thus disposed of, bring more than the sum for which they were purchased, so that these matters are likely to balance themselves in time. (*Hite* v. *Hite*, 93 Ky. 257, [40 Am. St. Rep. 189, 19 L. R. A. 173, 20 S. W. 778]; *In re Penn-Gaskell's Estate*, 208 Pa. 346, [57 Atl. 715].) **[1]** The weight of authority, however, and, we believe, the better view, is the rule finally adopted in New York in the case of *In re Stevens, supra*, to the effect that, "in the absence of a clear direction in the will to the contrary, where investments are made by the trustee, the principal must be maintained intact from loss by payment of premium on securities having only a definite term to run." This rule has been consistently followed in New York (*Dexter* v. *Watson*, 54 Misc. Rep. 484, [106 N. Y. Supp. 80]; *Furniss* v. *Cruikshank*, 191 App. Div. 450, [181 N. Y. Supp. 522, 528]), and has been adopted in New Jersey, Connecticut, and Wisconsin. (*Ballantine* v. *Young*, 74 N. J. Eq. 572, [70 Atl. 668]; *Curtis* v. *Osborn*, 79 Conn. 555, [65 Atl. 968]; *In re Wells*, 156 Wis. 294, [144 N. W. 174]; see note, 4 A. L. R. 1249.)

A testator who creates a trust such as that in the instant case has two objects in view: First, the payment of the income arising from a fund to certain persons during lifetime; second, the transfer of that fund to certain individuals upon the death of the life tenants. The existence of a *corpus*, principal, or fund is an essential element of the trust and the *preservation* of this principal until the termination of the life estates is indispensable to the fulfillment of the testator's plans. Therefore, any depletion of the principal tends to frustrate the fundamental purpose of the trust and should be avoided and, where the price paid for a bond consists of more than the par value thereof, that method of accounting should be adopted which will prevent the impairment of the principal unless the testator has clearly directed to the contrary. Otherwise the life tenant, who is entitled to receive only income, will, in effect, have received a part of the principal. In other words, where a premium is paid, the ostensible interest yielded by the bond cannot be considered entirely as interest on the face value of the bond, for a sum in excess of the face value has gone into the investment and the amount of interest remains unchanged, resulting, necessarily, in a decreased rate of return. A portion of the nominal interest is, therefore, a repayment of the premium.

This duty to restore to principal the total amount invested in the bonds cannot be evaded upon the theory that the bonds may, as a result of fluctuations in market value, be sold at higher prices than those for which they were purchased. A trustee is not permitted to buy and sell on speculation. The fluctuations in market value after purchase by the trustee are merely changes in the value of the assets of the trust estate, which are to be wholly disregarded in any accounting between life tenant and remainderman for funds from the trust estate invested in income-bearing property. (*In re Stevens, supra.*)

[2] The deduction from interest of the amount paid as premium is not a violation of sections 723 and 724 of the Civil Code, prohibiting accumulations of income except during minority and for the benefit of the minor. The entire net income from the bonds is distributed, for, as previously stated, a portion of the interest on the bonds is in reality return of a part of the principal invested therein to the

*corpus* of the trust estate, in the same sense that sums of money are returned to principal when a loan is repaid in installments. The trustee is not withholding any part of the *income* for the purpose of investing it, as new capital. (*Estate of Steele*, 124 Cal. 533, 541, [57 Pac. 564].)

In the present case the testator has given no direction that the principal of the trust estate should bear the loss occasioned by the wearing away of premium. The bequest to appellant of three-fourths of the "entire net income" cannot be interpreted as such a direction in view of the fact that part of the interest on the bonds is not, strictly speaking, income, but a return of capital. It is pointed out that the testator provided that no investments of trust funds should be made in bonds of the United States, "for the reason that said bonds yield too low a rate of interest." At the time of the hearing, United States Liberty bonds were yielding a higher rate of interest than many of the bonds of the trust estate after the deduction from their interest return of a proportionate part of the premium. This, it is urged by appellant, shows that no deduction should be made from the interest on the bonds of the trust estate, since the return to the life tenant would thereby be made lower than intended by the testator. This inference cannot be drawn from the provision in question, for any inference deduced from the provision in regard to United States bonds must be based upon the facts existing at the time the testator made the provision. At the time the will was executed and that the testator died, the year 1914, the interest on United States bonds was far lower than the lowest yield of any bonds of the trust estate after deductions on account of premium. The will contains the following provision: "If at the end of any one year it shall appear that my said wife has not received an average of at least the sum of seven hundred and fifty ($750) dollars for each month of said year . . . *then and in that event* said trustee shall resort to the personal property of the *corpus* of said trust estate, and thereout shall take sufficient to make up and pay over to my said wife a sum sufficient to make the aggregate receipts of my said wife the equivalent of seven hundred and fifty ($750) dollars for each month of said year." (Italics ours.) Appellant's income from the estate has not fallen below the sum of $750 per month, but has far exceeded that minimum and, conse-

quently, the only contingency upon which the testator has authorized payments to the life tenant from the *corpus* of the trust estate has not arisen. The testator has not only not directed the charging of premium to principal, but has clearly indicated that the *corpus* is not to be resorted to unless the income falls below the specified minimum.

The order appealed from made an allowance to the trustee of five hundred dollars as compensation to its attorney for legal services rendered by the latter upon a former appeal to the supreme court from an order settling the second annual account of the trustees (*Estate of Gartenlaub, ante,* p. 375, 16 A. L. R. 520, 197 Pac. 90]), and $250 for services rendered upon the hearing of the fourth annual account of the said trustee. It is contended that these matters constituted litigation between the life tenant and remaindermen which was not hostile to the trust itself and in which the participation of the trustee was gratuitous and uncalled for, and, therefore, that the trustee is not entitled to an allowance for attorney's fees. **[3]** It is a general rule that trustees are entitled to reimbursement for expense incurred in good faith in the execution of the trust. (*Denvir* v. *Park,* 169 Mo. App. 335, [152 S. W. 604].) While the participation of a trustee in litigation between rival claimants not involving the execution of the trust would seem unwarranted, the present case does not present such a state of facts. The litigation arose upon the settling of the trustee's accounts and concerned the interpretation of the instrument creating the trust and a determination of the proper mode of executing the trust. The trustee was, therefore, directly interested in its representative capacity and was not without authority to employ a legal representative in the interests of the trust estate. "The rule which has been applied in a great variety of cases affecting the administration and execution of trusts is that a trustee has a right, whenever necessary to the proper administration, preservation, and execution of the trust and the prosecution or defense of action, to employ counsel and to be reimbursed from the trust estate for whatever sums he has paid for the services of such counsel. The rule is applicable even though the *cestui que trust* employed counsel to represent the same interests, and although, to a certain extent, the private and personal interests of the trustee may also be involved in the litigation." (39 Cyc. 339.) It is immaterial

that counsel for the trustee supported appellant's claim upon the hearing of the fourth account and later altered his position, maintaining on this appeal that the items representing a portion of the premium on bonds were correctly charged against income. The duty of the trustee and its counsel was to aid the court in deciding upon a correct administration of the trust funds, without regard to the conflicting claims of beneficiaries. If, upon the appeal, the order of the court below appeared to the trustee correct, it was the duty of the trustee to support that order.

The five hundred dollars thus allowed the trustee for attorney's services rendered in the litigation, as well as an additional allowance for so-called "ordinary" services of attorneys in connection with the preparation and presentation of the annual account of the trustee, were ordered paid from the income of the trust estate. The reasonableness of the sums allowed is not questioned, but it is claimed that they should have been charged to principal rather than income. The decision of *Cogswell* v. *Weston,* 228 Mass. 219, [117 N. E. 37], lays down the following rule for the payment of the expenses incurred in the execution of a trust: "The regular annual or periodically recurring expenses arising in the administration of a productive trust commonly are paid out of the income, while extraordinary and unusual expenses are chargeable against the capital. The costs of litigation generally fall in the latter class. These rules apply in cases where the question concerns life tenants and remaindermen, both guiltless of any wrong against the trust and where the point of incidence of proper expenses must be determined as between innocent persons." The following cases hold that costs of litigation in connection with the execution of a trust are payable from the principal of the trust: *In re Osborne,* 209 N. Y. 450, [Ann. Cas. 1915A, 298, 50 L. R. A. (N. S.) 510, 103 N. E. 723, 731]; *In re Schaefer,* 222 N. Y. 533, [118 N. E. 1076]; affirmed, 178 App. Div. 117, [165 N. Y. Supp. 19, 23]. [4] Where litigation becomes necessary to remove a doubt or ambiguity so as to insure the correct administration of the trust, the expense is an extraordinary charge which, unless otherwise provided by the testator, should be borne by all parties. If the expense of litigation incident to the trust is paid from principal, the life tenant, as well as the remainderman, shares the burden, for in that event

.the life tenant is deprived of the interest on the sum taken from principal. However, expenses in regard to matters concerning the ordinary management of the trust, such as the preparation of annual accounts, are usually payable from income. (Howe's Income and Principal, p. 67.) [5] That these ordinary expenses are to be paid from income in this case, at least, is clear from the fact that the will provided that the life tenants should have only the "net" income, thus indicating that all current expenses are to be deducted from income.

The order appealed from must be modified in accordance with the rule set forth in the immediately preceding paragraph. That is to say, the income must be credited and principal charged with the amount allowed to the trustee as compensation for its attorney for "extraordinary" services in connection with the execution of the trust. The trial court is directed to so modify the order, and when so modified the order will stand affirmed, without costs to either party upon this appeal.

Sloane, J., Wilbur, J., Olney, J., Shaw, J., Angellotti, C. J., and Lawlor, J., concurred.

A petition for modification of judgment was denied by the court on June 9, 1921.

All the Justices concurred.