[S. F. No. 12593. In Bank.—November 26, 1928.]

In the Matter of the Estate of JOSEPHINE A. PHELPS, Deceased. FLORENCE LANSING et al., Appellants, v. W. F. CHIPMAN et al., Respondents.

620

Lasher B. Gallagher for Appellants.

W. C. Sharpsteen, Alden Ames, Simeon E. Sheffey, R. P. Henshall, A. McCulloch, Tobin & Tobin and Edward T. McLean, *in pro. per.*, for Respondents.

SHENK, J.—This is an appeal from an order settling the sixth account of W. F. Chipman, trustee, in the matter of the estate of Josephine A. Phelps, deceased, and particularly from those portions of the order directing the transfer of trustee's fees and attorney's fees from charges against income to charges against principal and directing the trustee to make the payment of $12,950.27, as income, to Eugenie H. Schroeder, an annuitant under the will.

Josephine A. Phelps died testate on December 5, 1916, in the county of San Mateo. The will, admitted to probate, created a trust for the benefit of certain named beneficiaries, including the appellants, Florence Lansing and Clara Ethel Cooley. By the terms of the will, life estates in certain properties were vested in Virginia A. Lord and Eugenie H. Schroeder, sisters of the decedent. W. F. Chipman and Union Trust Company were appointed executors of the will and also trustees to carry out the provisions of the trust. Prior to distribution the court made an order directing the executors to sell property of the estate and to pay to Virginia A. Lord certain sums claimed by her to be due under the terms of the will. Upon an appeal by the executors the order was reversed (*Estate of Phelps*, 179 Cal. 703 [178 Pac. 846]). The executors filed their final account and report and petition for distribution. The account was approved and distribution ordered. On appeal from the decree of distribution attacking the validity of the trust, the same was declared valid and operative except in certain particulars not involved herein. The decree of distribution was reversed, with directions to enter an order distributing to the several specific devisees and legatees

the property devised and bequeathed to them under the valid portions of the will, and to distribute the remainder to the trustees, to be held by them upon the trusts declared in the will (*Estate of Phelps*, 182 Cal. 752 [190 Pac. 17]). Thereafter, and on July 22, 1920, the executors submitted to the probate court their second and supplemental final account and report and petition for distribution. On September 20, 1920, the account was approved and distribution ordered to the life tenants and the residue to the trustees.

By the terms of the fifth article of the will the beneficiaries were established as class "A" and class "B." The class "A" beneficiaries were five brothers and sisters of the decedent. As to them the trustees were directed to pay monthly out of the net income of the estate annuities aggregating $900 per month. The will further provided that, should the income in any month be insufficient to pay all of said annuities in full, the trustees were directed to pay the annuities to Virginia A. Lord and Eugenie H. Schroeder in full and prorate the balance among the remaining annuitants, and that whenever there should be more than sufficient to pay all of said annuities in full, the trustees should pay such annuitants as had not received their annuities in full a sufficient sum to make up such deficit, but without interest. The trustees were then directed to sell from time to time, when sales might in the judgment of the trustees be profitably made, sufficient of the estate to yield a fund of $240,000. Upon the accumulation of such fund the trustees were directed to invest the same and from the income thereof pay to the annuitants certain specified percentages thereof, respectively, in lieu of the annuities theretofore provided for. Provision was then made that in the event that any of said annuitants should not be living at the time of the accumulation of said fund of $240,000, or if then living should afterward die, the fund of $240,000 was to be paid to certain named heirs of the annuitants.

As to the class "B" beneficiaries, the trustees were directed, as sales of the estate should be made, to pay legacies in specified amounts to twenty-nine different persons, corporations and associations, and in the order named. The first five legacies aggregate $115,000. The sixth and seventh are in favor of the appellants herein and are in the sum of $15,000 each. The remainder of the estate, as to

the disposition thereof provided for in the fifth article, was directed to be paid in equal shares to two of the sisters, Virginia A. Lord and Eugenie H. Schroeder, and to a nephew, W. F. Chipman, if living, and if dead, to their heirs.

The second order of distribution decreed that the right to the annuities provided for in the class "A" schedule of beneficiaries should vest in the respective annuitants at the dates the same became or should become payable, and that said annuities "are hereby decreed to be a preferred charge on the whole of the net income of said estate, other than the fund of $240,000, after the same has been accumulated, whenever realized." From the second decree of distribution no appeal was taken.

Some time after the entry of the second decree of distribution and prior to February 21, 1927, the Union Trust Company resigned as trustee and W. F. Chipman became and has continued to act as sole trustee. On February 21, 1927, W. F. Chipman filed his sixth account and report as trustee, showing that at that date he had in his possession assets of the estate valued at $389,818.63. This account also shows that all of the expenses of the estate accruing prior to the sixth account have been paid; that the income from the estate covered by the report was the sum of $19,383.15; that $10,000 on account of trustee's fees and $17,000 on account of attorney's fees, theretofore allowed by the court, had been charged to income, and that other expenses of the estate in the sum of $8,432.88 had accrued. If this charge of $27,000 for trustee's and attorney's fees and the additional charges for other expenses were made against income alone the result would be not only an overdraft of $14,049.73 on the income account, but no funds whatever would be available for the annuitants. ▉ The terms of the will indicate very clearly that it was the intention of the testatrix to provide a monthly income for the annuitants who were first in her thought and affections. The testatrix expressly stated in her will that she believed her estate sufficient to provide for the monthly payment of the annuities and the specific bequests. She certainly contemplated that the estate would be so administered that the annuitants should obtain some benefit from her bounty during their lifetime. Instead of accomplishing that purpose, and due to the delays in administering the estate,

the annuitants have been deprived of their income, and if no greater progress is made the trust estate will not be closed during the lifetime of any of them, nor at all until the accumulating annuities are liquidated. The outlook is not encouraging for the reason that the expenses of administering the trust are continually exceeding the income, and more than ten years have elapsed since the executors were appointed. Two of the five annuitants have died and the other three have passed the allotted time of three-score and ten.

This was the situation confronting the probate court when it was called upon to approve the sixth account. The court determined that the general expense accruing during the period covered by the account be charged against the income account, but that the trustee's fees and the attorney's fees should be charged against the *corpus* of the estate, leaving a balance of $12,950.27 of unexpended income in the hands of the trustee to apply on the accumulated annuities, amounting to $39,333.34. The decision of the court in this respect was eminently just and in accordance with the obvious intention of the testatrix and should be allowed to stand unless there is some insuperable legal obstacle to prevent it.

We think the order may be legally justified. In the first place, the decree distributing the estate to the trustees provided that the annuities should be a preferred charge on the whole of the net income of the estate. The plain intention of the testatrix was that this should be so. Section 1563 of the Code of Civil Procedure provides, among other things, that the estate is liable for the expenses of administration in proportion to the value or amount of the several devises or legacies, but specific devises or legacies are exempt from such liability if it appears to the court necessary to carry into effect the intention of the testator and there is other sufficient estate. There is ample in the residuary estate to provide for the sums allocated by the court to payment from the *corpus* and the residuary legatees are not appealing from the order. Therefore, since the bequests to the annuitants were specific, and since it was the intention of the testatrix that the net income should be devoted to the annuitants as a preferred class, and since there is sufficient estate to care for the expenses of admin-

istration without jeopardizing the other specific legatees, including these appellants, the order appealed from is not open to successful attack.

The appellants cite and rely upon *Estate of Gartenlaub*, 185 Cal. 648 [16 A. L. R. 520, 198 Pac. 209], which holds that as a general rule testamentary trustees are entitled to reimbursement for expenses incurred in good faith in the execution of the trust, and that the expenses of administering the estate are usually payable from income. Such, no doubt, is the general rule. In its application, however, cognizance must necessarily be taken of the intention of the testator, and if, as here, it be clear that it was intended that the net income should be devoted exclusively to the satisfaction of specific bequests, the case is within the rule. There is nothing here decided inconsistent with the general rule.

It is further insisted that since the probate court, on the approval of a prior account, provided that the trustee's fees and the attorney's fees be paid from income, there was no alternative for the court in the consideration of the present account but to charge such fees to income. We do not think that there was such finality in the approval of the prior account as would foreclose the court from making an order with reference to the account in hand appropriate to the facts and circumstances presented on the hearing of the later account, especially in view of the terms of the final decree of distribution.

The order is affirmed.

Richards, J., Langdon, J., Seawell, J., Preston, J., Curtis, J., and Waste, C. J., concurred.