[Civ. No. 11386.   First Appellate District, Division One.—June 19, 1940.]

In the Matter of the Estate of HORACE W. AMPHLETT, Deceased.   JANET E. AMPHLETT et al., Appellants, v. ALFRED A. JOHNSON, Trustee, etc., et al., Respondents.   ELEANOR AMPHLETT, Appellant, v. ALFRED A. JOHNSON, Trustee, etc., et al., Respondents.

Morrison, Hohfeld, Foerster, Shuman & Clark, J. Hart Clinton and Noel A. Troy for Appellants Janet E. Amphlett et al.

Joseph E. Derham and Andrew F. Burke for Appellant Eleanor Amphlett.

Bradford M. Melvin and Faulkner & O'Connor for Respondent Trustees.

PETERS, P. J.—By his will Horace W. Amphlett created a trust for the benefit of his wife, his father and his three sisters. The decree of distribution distributed the trust property to the trustees named in the will to hold upon the trusts declared therein, without attempting to construe the provision of the trust now in controversy. The present proceeding was instituted by the widow to obtain a construction of the trust provision. (Sec. 1120 et seq. of the Probate Code; *Estate of Smith,* 4 Cal. App. (2d) 548 [41 Pac. (2d) 565].) The other beneficiaries also requested a construction of the provision in dispute. All parties, being dissatisfied with the construction given to the provision by the trial court, have appealed on a single bill of exceptions, the widow appealing from certain portions of the decree, and the other appellants from the entire decree. The widow contends that she has greater rights than the court's decree allows her, while the father and three sisters contend that she is entitled to less.

The trust provision which is the subject of dispute is as follows:

"My said trustees during the life of this trust shall pay the net income from this trust monthly, if practicable, but in any event at intervals of not to exceed three (3) months, as follows:

"The first Three Hundred Fifty Dollars ($350.00) per month to my wife, Eleanor Amphlett. Then to my sisters, Janet E. Amphlett, Kathleen M. Amphlett and Helen Amphlett Clinton, and my father, Richard M. Amphlett, share and share alike, the amount then remaining until each of them shall have received Three Hundred Fifty Dollars ($350.00) per month, and the balance then remaining, share and share

alike, to my wife, Eleanor Amphlett, my said sisters and my father, Richard M. Amphlett, or the survivors of them.''

There is no dispute but that, under the trust provision, the widow receives a preferential right to $350 per month from the income of the trust, if the income is sufficient. It is conceded that deficiencies in income cannot be made up from the *corpus*. The question presented is as to the extent of the preference granted the widow. The basic problem presented is whether, if income from the trust is less than $350 in any one month, the deficiency must be paid to her from income exceeding that amount received by the trustees in later months.

The trust property consists of all of the issued and outstanding stock of the Amphlett Printing Company, appraised at $105,252, and the residue of the estate. Included within the residue, and distributed to the trustees as part of the trust, were five promissory notes of the printing company representing debts owed the estate, totaling $19,000. The balance of the estate was either specifically bequeathed, was consumed in paying the debts of the decedent, in paying the expenses of administration, in paying the widow a family allowance, or was set aside to the widow as exempt property. The will was executed about three months before the testator's death, which occurred on November 29, 1933, and, by its terms, the trust is to terminate ten years from the date of death. Upon termination of the trust the *corpus* is to be divided equally among the five beneficiaries.

The will declares ''that substantially all the property now owned by me and standing in my name is my separate property''. The stock of the printing company stood in the name of the testator. The provision in the will in favor of the wife was in lieu of community property rights, and the widow, in due course, filed her written election to take under the will. The will designated three trustees to manage the trust. These three trustees were also the three persons constituting the board of directors of the printing company. In April of 1936 the board of directors was increased to five, one of the new members being one of the attorneys for the widow, the other being one of the attorneys for the father and three sisters.

The sole income of the trust is derived from dividends declared by the printing company, the five notes of that company constituting the balance of the trust estate being interest free until November 29, 1943, the date of the termination of the trust.

The trust estate was distributed to the named trustees by a decree of partial distribution dated October 8, 1934. No dividends at all were declared by the board of directors of the printing company between the date of death, November 29, 1933, and October 8, 1934, and none were declared thereafter until July of 1936, when a dividend of $5,012 was declared. On December 29, 1936, another dividend of $5,012 was received by the trustees. The total net income since the decree of distribution has averaged less than $350 per month. None of the appellants attacks a finding that dividends were paid at the earliest dates at which they could reasonably be declared and paid in the normal operation of the business of the company. It is also conceded that income of the printing company is not income of the trust estate until dividends are declared by the board of directors and received by the trustees.

The appellant wife contends that under the above-quoted provision she is entitled to have deficiencies in income made up from surplus income, if any, in subsequent months. To apply her theory to the particular facts here involved, it is her contention that the dividends totaling $10,024 received by the trustees must be applied by them to pay her at the rate of $350 a month for each month since the date of distribution. It is the theory of this appellant that the preferential right granted her is a cumulative right, and that the extent of that right is that she is entitled to an average payment of $350 per month before the other appellants are entitled to anything. This appellant concedes that the provision in question does not create a technical bequest for maintenance, and that it does not create a strict annuity within the meaning of section 161, subdivision 3, of the Probate Code.

The sisters and father of the deceased, also appellants, contend that under the above-quoted clause, properly interpreted, each month's income as received by the trustees constitutes a separate and distinct fund; that from that fund the widow is to be paid the first $350; that her right to such

preference vests upon the receipt of income each month by the trustees regardless of the time when payment thereof occurs; that if the trustees fail to receive $350 each and every month, no deficiency arises for those months in which nothing or in which less than $350 is received by the trustees; that no cumulative right is granted to the widow at all. Applying this construction to the facts involved herein, these appellants contend that the dividend of $5,012 received by the trustees in July of 1936, after deducting expenses, should be distributed as follows: The first $350 to Eleanor Amphlett; then $350 to the testator's father and to each of his three sisters, and the balance, share and share alike, to all five of the beneficiaries. The dividend received by the trustees in December, 1936, according to these appellants, should also be distributed in the same fashion.

The trial court, in construing the trust provision, adopted a middle course between the claims of the widow and the claims of the other beneficiaries. By its decree, from which the present appeals are taken, it first held that the widow has a preferential right to receive the first $350 distributed in any month by the trustees from the income of the trust estate. This interpretation is in accord with the contentions of all appellants. In the second place, the trial court held that the preferential right thus granted is also a limited cumulative right, that is, that when a dividend is received by the trustees the widow is entitled to the first $350 of said dividend for the month in which it is received, and if no dividend at all has been paid for the two preceding months she is entitled to $350 for each of the two preceding months before the father or sisters receive anything. In other words, the maximum cumulative right accorded the widow is for three months. The decree also provided, however, that if a distribution of any amount (less than $350) occurs in a given month, the widow's cumulative right ends with such distribution so far as that month is concerned. Thus if $100 was distributed in January to the widow, nothing was received in February, and the trustees received $2,100 in March, the widow would be entitled to $350 for March, $350 for February, and no further payment for January. The remaining $1400 would be divided among the other four beneficiaries, each receiving $350.

At the trial the opposing counsel contended that the clause in question was free from all ambiguity and that therefore evidence of the circumstances surrounding the execution of the will was not admissible. This view was shared by the trial court. On this appeal counsel for the sisters and father of the deceased continue to contend that the clause is free from ambiguity, but counsel for the widow urges that error was committed in excluding certain proffered evidence concerning the surrounding circumstances. In spite of the view taken by the trial court that the clause was free from ambiguity and, therefore, evidence of the surrounding circumstances was not admissible, some, but not all, of the evidence offered by the parties on this point was admitted. Thus, the trial court permitted the father and sisters of the deceased to offer in evidence, over the widow's objection, a summary of certain documents. In their brief the father and sisters rely heavily on some of the facts there disclosed as demonstrating that their interpretation is correct. On the other hand, the widow was permitted to testify, over the father's and sisters' objections, that, although the deceased and the widow were separated for some years prior to the death of the testator, their relations were friendly, and that he had in fact been contributing to her support prior to his death. In fact in its decree the trial court finds that at the time of the testator's death, and for many years prior thereto, the wife was dependent upon the decedent for support, and that for several years prior to his death the decedent was contributing not less than $350 per month to her support. It is true that this evidence was offered and admitted on the issue of whether the trust was a trust for maintenance, and that the widow now concedes that the trust is not technically one for maintenance; but the important fact is that all of the appellants, as well as the trial court, rely on this evidence in support of their opposing constructions of the clause in question.

The position finally taken by the trial court is shown by the following: Counsel for the widow offered evidence that in fact the stock of the printing company was community property. This evidence was important because this appellant contends that any bequest to a widow made in lieu of her community property rights must be construed most favorably in her favor. The trial court excluded this testimony.

The basis of the trial court's ruling was that until the court had determined that an ambiguity existed such evidence was inadmissible. After considerable argument between counsel, and between counsel and the court, the court stated: "I do not want you to anticipate that contingency, Mr. Burke, because in the event the court finds there is an ambiguity it will afford you the fullest opportunity to rebut these contentions and bring those matters in, and until that point is reached I do not think there is any necessity for it." Counsel for the widow then replied that such ruling was correct if it was understood that if the court should find there was an ambiguity they would be given the opportunity of offering extrinsic evidence. After some discussion Mr. Burke, counsel for appellant widow, stated that as he understood the court's position, either the court would rule the clause was unambiguous, in which event extrinsic evidence was not admissible, or the court would find the clause ambiguous, in which event "you will afford us an opportunity to make an offer of proof and then your Honor will rule upon the admissibility of the particular evidence we offer".

The trial court thereupon took the matter under submission, and apparently found the clause unambiguous and rendered its decree accordingly.

A mere reading of the clause in question demonstrates that it is ambiguous. There are at least three possible constructions of the disputed provision. Counsel on each side have filed exhaustive briefs in which cogent arguments are advanced to support their particular construction of the trust. There are arguments not advanced by any of the appellants to sustain the construction adopted by the trial court. Under such circumstances it is clear that extrinsic evidence should have been admitted to assist the court in interpreting the clause. The trial court should have permitted counsel to introduce any relevant evidence of the surrounding circumstances. Evidence as to whether the stock was in fact community property; whether the testator and his wife had ever disputed this point; whether the father and sisters of the decedent were in fact dependent on him; whether the decedent had contributed to their support prior to his death; the past dividend policy of the printing company; the past earning capacity of that company—these and other matters obviously will shed some light on the proper interpretation

of the clause in question, and will assist the trial court and the appellate court in properly interpreting the same.

It also should be stated that the father and sisters of decedent attack a finding contained in the decree that the decedent for several years prior to his death had contributed at least $350 per month to the support of the wife. It is at least doubtful if the evidence contained in the bill of exceptions supports that finding. Without now passing on the question as a matter of law, the attention of the parties should be directed to this point so that it may be clarified on the new trial.

■ On behalf of the widow of the decedent it is contended that costs of all of the parties on these appeals should be made a charge upon and paid out of the income of the trust estate. This is challenged by the other appellants on the ground that inasmuch as it is conceded by all that the widow has a preferential right to income, any such ruling would adversely affect the father and sisters who have secondary rights in the income. Conceding that the court in a proper case has the power to make the costs a charge on the income or *corpus* of the trust estate (*Estate of Gartenlaub*, 185 Cal. 648, 655 [198 Pac. 209, 16 A. L. R. 520]; *In re Gabler's Will*, 235 App. Div. 807 [257 N. Y. Supp. 311]), because of the unequal interests of the beneficiaries, and, in the exercise of our discretion, we do not think this is a proper case to exercise that power.

From what has been said, it is obvious that the appeals are meritorious and that the decree must be reversed.

The decree is reversed, each of the parties to bear his or her own costs on these appeals.

Knight, J., and Ward, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 15, 1940.