[Civ. No. 23407. Second Dist., Div. Two. Jan. 20, 1959.]

HARRY JEROME WILSON, Appellant, v. BOARD OF RETIREMENT OF THE LOS ANGELES COUNTY EMPLOYEES RETIREMENT ASSOCIATION et al., Respondents.

John J. Guerin for Appellant.

Harold W. Kennedy, County Counsel, and Edward H. Gaylord, Deputy County Counsel, for Respondents.

HERNDON, J.—Appellant instituted the instant action as a member of the Los Angeles County Employees Retirement Association, and also as a taxpayer of said county, alleging that respondent board of retirement of said association violated its duties in purchasing certain securities with funds of the retirement system. The complaint is in three counts: the first is for declaratory relief; the second (based on the allegations of the first) sounds in assumpsit for the sum of $2,090,770.65 allegedly owed the county and the retirement system by virtue of the unlawful purchase of bonds at a premium; and the third seeks a judgment for the difference between $4,000,000 paid for securities of the International Bank for Reconstruction and Development and the market value of such securities at the date of the filing of the complaint, and also certain incidental declaratory relief. Plaintiff moved for a summary judgment and defendants moved for a judgment on the pleadings. Plaintiff appeals from the adverse judgment entered upon the granting of the latter motion.

Appellant correctly points out that there is no dispute concerning the facts and that the issues presented by this appeal are purely legal in nature.

The factual background necessary to an understanding of appellant's contentions may be briefly summarized as follows: Since January 1, 1938, all permanent employees, certain elected officials, and the employees of the several districts of Los Angeles County are members of the Los Angeles County Employees Retirement Association, under the statutory authorization of what are now section 31450 et seq. of the Government Code. The funds of the association are substantial; as of December 31, 1957, the total assets of the retirement fund exceeded $179,000,000. These funds are carried upon the books of the county auditor and treasurer (Gov. Code, § 31588) and the funds are in the safekeeping of the county treasurer. (Gov. Code, § 31594.) The respondent board of retirement is vested with the management of the retirement system (Gov. Code, §§ 31520-31532) and with the management and control of the retirement fund. (Gov. Code, § 31594.) It is agreed that the following provisions of section 31595 of the Government Code limit the authorized investments available to respondent board:

"All funds received by the county treasurer not required for current disbursements shall be invested only in: (a) Securities which are legal for savings bank investments in the State . . ."

Section 1372 of the Financial Code[1] deals with the construc-

---

[1] *"Other laws authorizing investment in securities legal for savings banks; construction.* The provisions of this chapter govern the investment of funds by savings banks but wherever by any law of this State it is now provided that the moneys of any pension funds, retirement plan, trust fund, or the moneys of any special fund the investment of which is governed by law, or the funds of any political subdivision or public corporation may or shall be invested in securities which are a legal investment for savings banks, then such law shall be deemed to authorize or require, as the case may be, that such moneys be invested in securities in which savings banks were authorized to invest their funds by the provisions of the Bank Act as it read prior to January 1, 1949, including securities authorized for investment by paragraph (f) of subdivision 5 of Section 61 of the Bank Act (for which purpose said paragraph (f) shall be deemed to have been reenacted on December 31, 1948), or by any other law of this State or in which savings banks are authorized to invest their funds by the provisions of Sections 1350 to 1366, inclusive, of this chapter; provided, that the provisions of said sections limiting the amount which a savings bank may invest in securities to a specified percent of its paid-up capital and surplus, or savings deposits, shall not apply to investments authorized by the terms of this section.''

tion of statutes (other than those codified in chapter 11 of the Financial Code) authorizing investment in securities which are legal for savings banks, and provides in effect that such investments as were authorized by the Bank Act (now repealed) are legalized thereby. This section also provides that paragraph (f) of subdivision 5 of section 61 of the Bank Act ". . . shall be deemed to have been reenacted on December 31, 1948. . . ."

The pertinent portions of section 61 of the Bank Act, to which reference has been made in the statute above, are found in Statutes 1909, chapter 76, page 87, and as amended by Statutes 1941, chapter 795, pages 2332-2334, and read as follows:

'Sec. 61. Any savings bank may purchase, hold or sell real or personal property, as follows:

". . . . . . . . . . . . .

"5. Irrespective of the provisions of subdivision 6 of this section, bonds and other securities of the following classes:

". . . . . . . . . . . .

"(f) Bonds legal for investment by savings banks in the State of New York or the State of Massachusetts;

". . . . . . . . . . . .

"6. Bonds and other securities of the following classes; provided, that such bonds or securities shall first have been certified by the Superintendent of Banks after an investigation as provided for under Section 61a of this act . . ."

It is not disputed that prior to the institution of this action the named respondents paid the sum of $2,090,770.65 as "premiums" on securities purchased with the funds of the retirement system; however, the parties agree that the word "premium" means and was intended to mean ". . . that part of the purchase price other than accrued interest in excess of the par value of the security purchased." In other words, the parties agree that prior to the institution of this action the respondents purchased bonds for the retirement fund at prices which in the aggregate exceeded the total par value of the bonds by $2,090,770.65. (See *Estate of Gartenlaub,* 185 Cal. 648, 650 [198 P. 209, 16 A.L.R. 520].) The parties also agree that the respondents have credited sufficient of the interest received on these securities to the "premiums" paid to amortize the premiums prior to maturity of the respective bonds. Finally, it is agreed that prior to September 11, 1957, the respondents purchased $4,000,000 par value bonds of the International Bank for Reconstruction and Development with the funds of the retirement system.

Appellant's theories, on which his complaint was framed, are (a) that respondents had no authority to purchase securities above par, and that the Retirement Board improperly deducts an amount each year from interest received on the premium securities to amortize the premium paid for them; and (b) that prior to September 11, 1957, bonds of the International Bank for Reconstruction and Development were not authorized as legal investments for the retirement fund, and that on the date the suit was filed the market value of such securities was less than the price paid for them.

The prayer is for declaratory relief, an accounting, a judgment in the sum of $2,090,770.65 with interest and penalties, judgment for the difference between the price paid and the market value of the International Bank's bonds and for interest, penalties, costs of suit and attorney's fees.

Initially, appellant argues that the respondents had no authority to purchase securities above par. He says: ". . . the Retirement Law of 1937, read as a whole forbids the payment of premiums to private persons, firms, or corporations with funds of the retirement system when purchasing securities; forbids the use of interest earned on the retirement fund to amortize interest so paid and further any premiums so paid from the retirement fund would be an unlawful gift of public moneys. . . ."

". . . the respondents herein are public officers administering the funds of a public trust and that the acts of such public officers must find specific authority under the Retirement Law of 1937 for their acts in relation to purchasing securities with funds of the retirement system; and unless there is such specific statutory authority and concededly there is none under the Retirement Law of 1937; or unless the case law determines that said respondents have such authority then they are not lawfully authorized to pay premiums with funds of the retirement system when purchasing securities or to recoup the premiums so paid from interest earned on the retirement fund."

Both appellant and respondents cite and rely on *Estate of Gartenlaub, supra,* 185 Cal. 648, as being determinative of the question whether a trustee may purchase securities at a premium. Appellant concedes that where the purchase at a premium *is* proper, *Gartenlaub, supra,* requires the trustee to amortize the premium paid from the interest received on the bond. But appellant contends that ". . . in the absence

of a specific direction in the trust instrument or the statute authorizing the purchase of a security at a premium such payments are improper and the amortization of such premiums paid from interest is equally improper.''

Appellant's contention finds no support in *Gartenlaub, supra*. In that case there was no specific provision in the trust instrument authorizing the trustee to purchase bonds at a premium, and the Supreme Court affirmed the order settling the accounts of the trustee who had purchased bonds at a premium and then amortized the premium paid from the interest received. (See 2 Scott, Trusts, 1335-1336, § 239.2; 4 Bogert, Trusts and Trustees, 314, § 831; 1 Nossaman, Trusts Administration and Taxation, 177-179, § 15.02.) As respondents illustrate with extensive citations, the practice of purchasing bonds for trust estates at prices exceeding their face value is well-known if not common. (See 4 A.L.R. 1249; 16 A.L.R. 527; 48 A.L.R. 689; 101 A.L.R. 7; 131 A.L.R. 1426; Edgerton, *Premiums and Discounts in Trust Accounts*, 31 Harv. L. Rev. 447, 461.) Respondent cites section 24 of title 12, United States Code, and the federal regulations thereunder (12 Code of Federal Regulations, p. 25, tit. 12, part 1, section 1.2, 3 Federal Register 1619) which authorizes national banks to purchase investment securities above par provided the premium paid is amortized, and respondent quotes extensively from an accounting treatise, Finney, Principles of Accounting (third ed., 1946) in which the propriety of the accounting procedure by which the amortization of the premium is effected is discussed.

■ Appellant concedes that it is a fact of which we may take judicial notice that it has been customary for banks to invest in bonds purchased at a premium. (*Cf. Graddon* v. *Knight*, 138 Cal.App.2d 577, 583 [292 P.2d 632]; see 18 Cal. Jur.2d 462, § 41.) ■ However, appellant contends that in such activity ''. . . private banks are dealing with private funds in a commercial enterprise carried on for profit, . . .'' and that the same rules as to investment practices do not apply to the custodian of a fund such as is involved in the instant case. Appellant's contention must be rejected. Legislative and judicial limitations on investment practices of banks and trust estates have the same object—the stability of the investment. Treating the powers and duties of respondents as those of the trustee of a trust, the law is established that the respondents have the power to purchase securities at a pre-

mium for the trust corpus. (*Estate of Gartenlaub, supra,* 185 Cal. 648; see Civ. Code, § 730.08.) And treating the powers and duties of respondents as solely derived from the statutory provisions of Government Code, section 31450 et seq., the explicit authorization therein to invest in "Securities which are legal for savings bank investments in the State . . ." (Gov. Code, § 31595) clearly indicates that the Legislature intended to establish a common standard of legality for the investments of savings banks and of funds of the character here involved. Thus, we must hold that there is nothing improper, in itself, in the purchase by respondents of securities at a premium. The indicated practice of amortizing such premiums must be sanctioned as being in accord with California law.

As stated in *Gartenlaub, supra,* at 652: ". . . where a premium is paid, the ostensible interest yielded by the bond cannot be considered entirely as interest on the face value of the bond, for a sum in excess of the face value has gone into the investment, and the amount of interest remains unchanged, resulting, necessarily, in a decreased rate of return. A portion of the nominal interest is, therefore, a repayment of the premium." Such a practice does not conflict with the provisions of section 31592 of the Government Code[2] which merely require that net income in excess of expenditures be funded as a reserve against deficiencies in income in other years. Thus, plaintiff's first and second causes of action, for declaratory relief and money judgment are without merit and the judgment for defendants must be affirmed.

██ Appellant's second contention and the third cause of action alleged involve the purchase by respondents prior to September 11, 1957, of $4,000,000 worth of bonds of the International Bank for Reconstruction and Development. It is appellant's contention that such bonds were not authorized as legal investments for the retirement fund because they were not certified as legal investments for savings banks in California as required by subdivision 6 of section 61 of the Bank Act quoted *supra*. Conceding that the subject bonds were not so certified, it is apparent that their purchase by respondent was authorized by the provisions of section 61, subdivision

---

[2]"*Excess interest as reserve against contingencies*

Interest earned on the retirement fund during any year in excess of the total interest credited to contributions during such year shall remain in the fund as a reserve against deficiencies in interest earned in other years, losses on investments, and other contingencies."

5(f)[3] of the Bank Act, *supra,* if the subject bonds were legal for investment by savings banks in either New York or Massachusetts on December 31, 1948 (the time as of which section 1372 of the Financial Code provides that ". . . paragraph (f) of subdivision 5 of Section 61 of the Bank Act . . ." shall be deemed to have been reenacted.) We take judicial notice of the laws of a sister state, (Code Civ. Proc., § 1875, subd. 3). Examining the statutes of Massachusetts we find that section 54 of chapter 168 of the General Laws of the State of Massachusetts, as amended by chapter 361, page 347, Statutes of 1948, specifically permits savings banks to invest in bonds, notes, or obligations issued, assumed, or guaranteed by the International Bank for Reconstruction and Development. This authority was in effect on December 31, 1948. The New York Bank Law, as amended by chapter 507, Statutes of 1946, provides that a savings bank may invest in "[o]bligations issued or guaranteed by the international bank for reconstruction and development." This provision also was in effect on December 31, 1948. Thus, we must conclude that the purchase of the subject bonds by respondents was proper because the subject bonds were legal for investment by savings banks in New York and Massachusetts, and therefore authorized for investment by respondents by section 1372 of the Financial Code.

 In 1957 the Financial Code was amended by the enactment of section 1360.1 as follows: *"Bonds of International Bank for Reconstruction and Development.* An amount not exceeding 25 percent of the paid-up capital and surplus of the savings bank or not exceeding 1 percent of the bank's savings deposits, whichever is lesser, in bonds issued by the International Bank for Reconstruction and Development." This section became effective on September 11, 1957, and is one of the statutes minutely defining the investments into which savings banks may put their funds. (Fin. Code, §§ 1350-1371.) Appellant here contends that the percentage limitations of savings bank investment in bonds of the International Bank found in section 1360.1 also apply to the retirement funds of the respondent association. Thus, appellant argues that the respondent board could not legally invest more than 1 per cent of the retirement funds in bonds of the International Bank and

---

[3] "5. Irrespective of the provisions of Subdivision 6 of this section, bonds and other securities of the following classes: . . .

"(f) Bonds legal for investment by savings banks in the State of New York or the State of Massachusetts";

that the board's purchase of $2,208,752.87 of such bonds was illegal as violative of section 1360.1 of the Financial Code.

Examining section 1360.1 we conclude that the Legislature did not intend for it to apply to ". . . any pension fund, retirement plan, trust fund, . . . or the funds of any political subdivision or public corporation . . ." (Fin. Code, § 1372) and appellant's contention must be rejected. Initially, it should be observed that a retirement fund of the character here in question has no "paid up capital and surplus" nor are its funds properly denominated "deposits." Thus, it would require a most strained construction of the language employed by the Legislature to apply section 1360.1. Moreover, the 1957 amendment is merely supplementary to an already existing, and quite comprehensive, statutory scheme by which the investments permitted savings banks were minutely defined. (Fin. Code, §§ 1350-1371.) However, section 1372 of the Financial Code specifically exempts ". . . any pension fund, retirement plan, [or] trust fund . . ." from the percentage limitations applicable to savings banks found in sections 1350 to 1366 of the Financial Code. From the insertion of the subject matter of section 1360.1 in these sections, we are fortified in our conclusion that the Legislature did not intend for the percentage limitations of section 1360.1 to apply to the investment management of the subject retirement fund.

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 18, 1959.