## Kinter's Appeal.    Fertig's Estate.

1. Act of October 13th 1840, § 1 (Review of Accounts), construed.
2. Private settlements with a guardian soon after the ward comes of age are watched with great jealousy.
3. The same jealousy exists when there has been a merely formal settlement in court.
4. Liberality ought to be exercised in allowing a review in such cases.
5. The object of the Act of 1840 was to make a bill of review a matter of right, and at the same time to prescribe a limit of time to the exercise of the power.
6. It was not the design of the act that when an accountant had not charged himself with money for which he was liable to account, the payment of the balance should preclude a re-examination.
7. The purpose of the act was that the decree sought to be reviewed should not be disturbed so as to do injustice to the accountant.
8. Whenever the object is to surcharge the accountant with money received and not accounted for and not to disturb an appropriation already decreed and payment made, the proviso in the Act of 1840 is not the way.
9. An heir on accepting land in partition entered into recognisance for payment to other heirs: upon his death his personal estate is the primary fund for payment.
10. His heirs are entitled, as against his administrator, to have the recognisance discharged from his personal estate.

[Kinter's Appeal.]

May 21st 1869.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Orphans' Court of *Dauphin county :* No. 108 to May Term 1868, in John K. Fertig, a minor's, estate.

On the 5th of June 1867, John K. Fertig presented to the Orphans' Court a petition for review of the account of Isaac Kinter, his guardian.   The petitioner represented that when he was about seven years old, Kinter was appointed his guardian and so continued until February 16th 1864 when the petitioner arrived at age : that on the 24th of December of that year the guardian filed his account which was confirmed January 31st 1865, showing a balance of $3380 due the ward : that the petitioner has discovered, since, what he believes to be material errors and omissions, viz : 1. That the guardian had not charged himself with $73.91, the ward's interest in the personal estate of his grandfather, as appeared by the administration account confirmed May 5th 1835.   2. That the guardian had not charged himself with the ward's share as the only heir of his mother in the real estate of her father taken at the appraisment by his sons John Kinter, Jr., and George Kinter, the former having taken one farm at $2700 ; the latter another, at $1700.

The petitioner further represented that as soon as he discovered the errors he applied to the guardian for explanation, but received no satisfaction except that he held the petitioner's release in full ; the petitioner averred that the release if given, was given in ignorance of his rights, confiding in the statements of the guardian as to the condition of his estate.   A citation was accordingly issued to the guardian.   On the return of the citation the guardian put in a plea that the complaint did not aver that any error in law appeared in the body of the decree confirming his account ; that the complaint alleged no new matter which had arisen or been discovered since the decree nor that the balance found to be due had not been paid.

The court, Pearson, P. J., overruled the plea and directed the respondent to answer.

The answer admitted that the respondent had been appointed guardian of the complainant on the 24th of April 1849, and alleged that on the 31st of January 1865, when the ward was about twenty-two years old, he filed his account, charging himself " with every dollar" of the ward's estate which had come into his hands and with much compound interest, and after inspection by the ward the account had been confirmed, and the court made a final decree that the balance $3380 should be paid to the ward ; that on the 3d of February 1865 he paid the balance to his ward, who executed to him a release in full of all claims, accounts, &c. The court overruled the answer as insufficient in law and

[Kinter's Appeal.]

appointed "John Roberts, Esq., an auditor to act on the within
petition, and to state an account, if the facts justify it."

The allegation of error as to the personal estate was not sus-
tained and need not further be noticed. Neither was that as to
the share of the valuation of the estate taken by George Kinter,
which therefore needs no further notice except as may be neces-
sary in explanation of the claims arising under the other portion
of the real estate.

From the auditor's report it appeared that John Kinter, Sr.,
died in the year 1833, leaving a widow, Elizabeth Kinter, and
six children amongst whom were John Kinter, Jr., George Kinter,
Isaac Kinter, the respondent, and Catharine, the wife of John
Fertig and mother of the complainant John K. Fertig. The
decedent died seised of two tracts of land, called respectively
the Clark's Creek tract and the Stony Creek tract. By proceed-
ings, in partition. the Stony Creek tract was adjudged, May 21st
1841, to John Kinter, Jr., at $2700, of which, the widow's share
being $900, there would be payable to each heir presently
$300. John Kinter, Jr., on the day of the adjudication, entered
into a recognisance, with his brother George as surety, to
pay the other heirs their respective shares. The complainant ⸜
was born February 16th 1843, his mother, Catharine Fertig, died
February 22d, leaving her husband, John Fertig, surviving. John
Kinter, Jr., died October 1st 1848; intestate, unmarried and
without issue. John Fertig, died October 21st 1848. November
13th 1848, the mother of John Kinter, Jr., and all his heirs,
except the complainant, released their interest in all his real and
personal estate to Isaac Kinter, the respondent. Elizabeth
Kinter, the widow of John Kinter, Sr., died October 25th 1868.

There was evidence that when John Kinter, Jr., died his farm
was well stocked with horses, cattle, sheep, &c., and with farming
implements generally, all which passed to Isaac, the respondent;
it was agreed, amongst those interested in the estate of John
Kinter, Sr., that his son George should pay $750, and John
should pay $1250, so that each of the heirs should have $500, and
their mother was to have her living from John's farm. Upon
the heirs executing a release of John's estate to Isaac, the
respondent, he was to pay all of them but one who had already
been paid. There was evidence also that in 1838, Isaac, on being
asked what had become the money owing to the ward from his
mother's estate, said he, Isaac, had the money, the ward should
have every cent of it, it was $500.

The auditor, in concluding his report, said :—

"This sum of $300 was due to Catharine, the mother of John
K. Fertig, and has remained a charge on the land ever since the
recognisance was entered into, or at least the auditor has seen
nothing to discharge it. Isaac Kinter, the guardian, came into

[Kinter's Appeal.]

possession as owner of the land with this charge resting on it, of which he was bound to take notice, particularly as he himself was one of the heirs, and should have paid it off, or charged himself with it in the settlement of his guardianship account rendered to the Orphans' Court, which not having done, the auditor charges him with it. John Fertig, the husband of Catharine, was entitled to receive the interest on this share or sum of $300 during his life, and the auditor presumes he did receive it. He died on the 23d of October 1848. The auditor, therefore, charges the accountant with the amount of Catherine's share, the aforenamed sum of $300, with interest thereon from the death of John Fertig, her husband, up to the 26th day of December 1864, the day that the accountant exhibited his account in the register's office for examination, leaving to John K. Fertig, who is now of age, to settle with his late guardian, Isaac Kinter, for the one-sixth of the one-third of the valuation of said farm, left as a charge on the land during the life of his grandmother, Elizabeth Kinter, who died on the 25th of October 1865, since John K. Fertig became of age, &c.

"He reported that there was due from Isaac Kinter, the respondent, to the complainant, principal and interest, to December 26th 1864, $591."

The report of the auditor, after exceptions by the respondent, was confirmed by the Orphans' Court, and he appealed to the Supreme Court.

Three errors were assigned : overruling his plea, overruling his answer and requiring an account, and confirming the report.

*Herman Alricks*, for appellant.—As to the sufficiency of the plea, Russell's Appeal, 10 Casey 261; Hartmann's Appeal, 12 Ibid. 74; Riddle's Appeal, 7 Harris 433. As to the answer: Act of October 13th 1840, § 1, Pamph. L. (1841) 1; Purd. 769, pl. 48; Bishop's Appeal, 10 Barr 471. As to third error: Fertig's interest was land, and when it descended, the lien of the recognisance as to him was merged: Jack *v.* Dougherty, 5 Watts 459 ; Phillips *v.* Bonsall, 2 Binney 142.

*S. J. M. McCarrell* and *D. Fleming*, for appellees, reviewed the cases cited by the appellant, and referred to Briggs's Appeal, 5 Watts 91, as to the first and second errors; and as to the third, Hartz's Appeal, 4 Wright 211; Richards *v.* Ayres, 1 W. & S. 485; Moore *v.* Harrisburg Bank, 8 Watts 138; Duncan *v.* Drury, 9 Barr 332.

The opinion of the Court was delivered, July 6th 1869, by
SHARSWOOD, J.—The first and second assignments of error may be considered together. The pleas and answer of the appellant,
12 P. F. SMITH—21

which were overruled in the Court below, allege that no bill of review could be sustained, because—1. The petition did not show any errors of law appearing in the body of the decree, nor any new matter which had arisen or been discovered since, nor—2. Did it aver that the balance found due had not been paid over by the accountant.

The petition, however, does set out that material errors and omissions in the account had been discovered since the decree. The evidence taken by the auditor shows the truth of this allegation, and there is no pretence that they were known to the appellee or made the subject of claim or dispute when the account was settled.    The case falls, therefore, strictly within the principle recognised in Russell's Appeal, 10 Casey 258.    To apply any other rule to the settlement of the account of guardians would often be productive of irremediable wrong.    When a young man comes of age he is most generally ignorant of his affairs, and the information which he receives upon the subject must come principally from his guardian.    He naturally feels great confidence that all is right, and omits to make the necessary inquiries from other quarters, or to call in the assistance of counsel.    He is too anxious to be master of the money to brook much delay.    Private settlements and releases between guardian and ward, shortly after the arrival of the latter at full age, have always been watched with great jealousy: Say's Executors *v.* Barnes, 4 S. & R. 112; Lukens' Appeal, 7 W. & S. 48.    The same reasons for jealousy exist even when the mere form of a settlement in Court has been gone through.    If no exceptions are filed, the confirmation of such accounts is usually a matter of course, and examination by the Court, however rigid, would fail to discover errors of omission such as are complained of here.    Liberality ought to be exercised in allowing bills of review in cases of this character.

Nor in our opinion does the proviso of the Act of October 13th 1840, § 1, Pamph. L. 1, apply.    The object of that act seems to have been to make a bill of review in the Orphans' Court a matter of right, and at the same time prescribe a limitation of time to the exercise of the power.    It was probably passed in consequence of the decision of this court in Briggs's Appeal, 5 Watts 91, where, in a case like that before us, it was held that the Orphans' Court, in the exercise of its discretion, had power to order a review of a guardian's account on the ground of money having been received by him and not accounted for, the omission having been newly discovered.    "At the same time," said Mr. Justice Sergeant, "it is requisite that this discretion be exercised with great caution, and only within a reasonable time; otherwise accounts never would be at rest."    We must construe the Act of 1840 in the light of the old law, the mischief and the remedy.    It never could have been the design of the legislature to provide

[Kinter's Appeal.]

that where an accountant had failed to charge himself with money, for which he was liable to account, that the payment of the balance should preclude a re-examination. We must give the law a reasonable interpretation—one in accordance with its spirit, and not its letter. The body of the act expressly declares that the court shall "give such relief as equity and justice may require." In a great majority of cases this could not be done if the payment of the balance was a bar to all inquiry. Such a rule would be a cover to the grossest frauds purposely concealed. It was meant as a shield to the honest accountant, not as a weapon in the hands of the dishonest to perpetrate iniquity. Its evident purpose was that the decree should never be disturbed so as to do injustice to the accountant. If under it he had paid over money, he ought to be protected in that payment, even though it should subsequently appear to have been wrongful. Whenever, therefore, the object of the review is to surcharge the accountant with money received by him, not accounted for, and therefore not at all included in the decree, and not to disturb an appropriation already decreed and consummated by payment, the proviso of the Act of 1840 is not in the way of the proceeding. This was intimated in the opinion of the court in Russell's Appeal, 10 Casey 262, though it was not indeed a point decided. Here the account of the guardian, so far as the balance paid over is concerned, stands entirely undisturbed by the review.

The 3d error assigned is, that the court erred in confirming the report of the auditor, and in not setting it aside upon the exception filed. The only point made by this exception was that the right of the appellee to the money due on the recognisance was merged, before the guardian was appointed, in the land of John Kinter, Jr., and the minor took his share in land as a nephew, and in right of his deceased mother. John Kinter, Jr., as one of the heirs of his father, had accepted a farm at an appraisement and given his recognisance in the Orphans' Court. A share of this appraised value belonged to the mother of the minor, and she was deceased. The report of the auditor showed that John Kinter, Jr., before his death, agreed with his brother George, that George should pay $750, and John $1250, which would give to each heir $500—and the widow their mother was to have her living off the farm in possession of John as long as she lived, and this was assented to by all the heirs. After the death of John Kinter, Jr., the widow and heirs of John Kinter, Sr., except the minor, released all their interest in the real and personal estate of John Kinter, Jr., to Isaac Kinter. This was November 13th 1848. On the 20th April 1849, Isaac Kinter was appointed the guardian of the appellee, and on 25th March 1851, the administrator of John Kinter, Jr., settled his account, showing a balance in his hands of $1268.91. After this Isaac Kinter, the guardian, ad-

mitted that he had the money that came from the minor's share of his grandfather's estate. He said he should have every cent of it that was due to him, and that the amount was $500. It is very evident that under this state of facts, the guardian was rightly charged with the share of the minor in his grandfather's land as actually received for him. Nor does it matter whether the guardian meant to acknowledge that he had it in land or money. When John Kinter, Jr., took the Stony Creek Farm, part of his father's estate at the appraisement, he became the purchaser of the shares of his co-heirs at that price. The recognisance into which he entered with surety, acknowledged his personal indebtedness to that amount—secured by law by a lien on the land. Upon his death his personal estate became the primary fund for its payment just as it would have been for a bond and mortgage given upon an ordinary purchase: Keyzey's Case, 9 S. & R. 71. His heirs at law taking the land by descent, were entitled as against his administrator to have the recognisance discharged from his personal estate: 1 Story's Eq., § 571. The guardian was bound to pursue this fund, and on the evidence the presumption is that he did. It is clearly immaterial, then, even though it should be held that the lien of the recognisance to the extent of the minor's interest as the heir of his grandfather was merged or extinguished by the descent of one-fifth of the land to him from his uncle, the recognisor. If the money had or ought to have been collected from his personal estate, the guardian was rightly surcharged with the amount.

> Decree affirmed, and appeal dismissed at the costs of the appellant.