[Civ. No. 12498–S. Second Appellate District, Division One.—April 15, 1940.]

In the Matter of the Estate of ANDREW W. HOVLAND, Deceased. REGINA WIKA et al., Appellants, v. ROBERT C. BALY, as Executor, etc., et al., Respondents.

Otto A. Hoecker, Edw. F. Wehrle and Daniel R. Shoemaker for Appellants.

G. P. Adams and Charles E. Beardsley for Respondents.

WHITE, J.—Appeal from an order made by the probate court upon a petition to determine who were entitled to distribution of an estate and to establish heirship.

Andrew W. Hovland executed his last will and testament on April 22, 1925. In the parts thereof pertinent to this appeal he disposed of his estate as follows: First, to Mrs. Elsie Garrison he bequeathed two parcels of real property, all rents accruing therefrom after his death, and a Buick automobile. Second, to Kari Bjelland he gave the sum of $1,000. Third, five-sixths of the balance of all moneys, securities and mortgages of which the testator died possessed were willed share and share alike to the children of his brother, S. S. Hovland, namely, Anna Larsen, Regina Wika, Celia Odlund, Hanna Hovland and Bertha Strand. The remaining one-sixth he bequeathed to the then living issue of his deceased niece, Marianna Strand, to wit, Sigurd Strand, Bernt Strand, Berit Strand, John Strand and Gjorgine Strand. Fourth, all the balance of his estate, both real and personal, he gave in equal shares to nine nephews and nieces, namely, Ben Hovland, Adolph Hovland, Chris Hovland, Ida Hovland Hagen, Kristine Eadkins, Helen Guida, Pete Hovland, Henry Hovland and Emily Hovland.

Prior to the execution of his will decedent, on April 17, 1925, borrowed $300 from the Bank of San Pedro upon his unsecured note. This obligation was discharged by payment thereof in the course of administration.

Subsequent to the execution of his will decedent, on June 27, 1925, borrowed from the same bank $4,000 upon his unsecured promissory note. Two days later, on June 29th, and during his last illness, decedent delivered to Robert C. Baly, named as executor in his will, his personal check for $4,000, accompanied by a letter reading as follows:

"I hand you herewith check in the sum of $4,000.00. You are instructed to hold this amount in your name and pay to Hugo Johnson any moneys due him in accordance with the terms of a certain contract for the erection of four garages and apartment on the property described as

"Lot 9, Block 1 of the Palos Verdes Tract.

"Yours very truly,

"ANDREW W. HOVLAND."

Mr. Baly deposited the $4,000 in the bank in his own name and made no disbursements therefrom during the lifetime of decedent.

On June 30, 1925, decedent contracted in writing on behalf of himself, his heirs, executors, administrators and assigns, with Hugo Johnson, the latter's heirs, executors, administrators and assigns, for the erection of a combination dwelling and garage on certain property belonging to the testator for the agreed sum of $3,833. This is the property devised in the will to Elsie Garrison. Six days later, on July 5, 1925, Andrew W. Hovland died, and on August 5, 1925, his will was admitted to probate.

In due course Mr. Baly, as executor under the will, filed an inventory, and the item therein of "Moneys belonging to said deceased which have come to the hands of the executor, $4,284.55," included the aforesaid sum of $4,000 transferred to Baly on June 29, 1925, as hereinbefore set forth, and which sum remained continuously in Baly's possession until after the demise of Mr. Hovland.

On June 29, 1926, the claim of the Bank of San Pedro for $4,000 on the hereinbefore mentioned promissory note was approved by the court, the same having been theretofore, on September 26, 1925, allowed by the executor. On September 26, 1925, the claim of Hugo Johnson on the above-

mentioned contract for $3,833 was allowed by the executor, and approved by the court on June 29, 1926.

On January 23, 1929, the executor filed his verified first account, in which he charged himself, among other things, with the item of $4,000 heretofore mentioned and which will hereinafter become the subject of discussion in this case. This account also showed the collection of certain mortgages and liquidation of certain stock. In the verified report and petition accompanying the first account the executor alleged that the residuary estate, ''which consists of real property is charged with the debts of said deceased together with the charges of administration. The personalty of said Estate having been specifically bequeathed under paragraph 3 of said will.'' Objections were made by appellants here to the application of the personalty which had been bequeathed to them and Anna Larsen for the payment of claims, debts, improvements and administration costs. Subject to said objections, which were reserved by stipulation for determination at a subsequent account or hearing, the first account was settled, as was the second account upon similar objections and a similar stipulation. Thereafter the third and fourth accounts current were similarly settled over like objections.

On October 21, 1927, appellants filed a petition for partial distribution, and after setting forth the bequests to them *verbatim,* alleged that such bequests consisted of $4,284.55 cash, securities and mortgages, and included the aforesaid $4,000 delivered to Mr. Baly by the testator prior to the latter's death. On November 18, 1927, partial distribution in the amount of $15,000 was had. On May 3, 1928, a petition for partial distribution containing similar allegations was filed by Anna Larsen, upon which an order was made for partial distribution to her of $13,000.

A dispute having arisen as to the interpretation of the will and its application to the assets as set forth in the inventory and then on hand, appellants filed a petition to determine heirship. Following a hearing had on the petition of appellants to determine who are entitled to distribution of the estate and to establish heirship, the court made findings determining that the aforesaid sum of $4,000 delivered to Robert C. Baly prior to the demise of the testator was held by Baly in trust to be used in accordance with the instructions contained in the letter transmitting it, and that

the whole of said sum should not have been included by Baly as executor in his inventory of the property belonging to the estate of decedent. The court further found that Baly paid out of said sum of $4,000 a total of $3,833 to Hugo Johnson, the person named in the letter, upon the contract for the erection of the buildings referred to in said letter, and that only the balance of $167 of said total sum was properly returnable in the inventory as part of the estate of decedent.

With reference to the third paragraph of the will hereinbefore set forth, the court found that the petitioners, Bernt Strand, Sigurd Strand, Berit Strand, John Strand and Gjorgine Strand, are the issue of said decedent's niece, Marianna Strand, and that each and all survived the decedent. With reference to the question as to the rights and interests of John H. Garrison, assignee of Elsie Garrison, and the prior rights and interests of petitioners and the possible abatement of either, the court found that such question had not been adjudicated and reserved decision thereon. Based upon the foregoing findings and subsequent conclusions of law, the court made its order decreeing that the $4,000 delivered to Robert C. Baly by decedent during the latter's lifetime constituted a trust fund, and that only the surplus of $167 thereof which remained in the hands of Baly as trustee after discharging his trust is properly to be included in the inventory of the estate, and that said sum of $4,000 did not constitute moneys of which decedent died possessed; and which order further provided "that the balance, if any, due and payable to the petitioners herein upon the bequest contained in paragraph third of the said will shall be determined after payment of the debts and administration expenses of the within estate, and that if the balance of funds and property in the hands of the executor is insufficient to pay such debts and expenses of administration, contribution thereto from those to whom bequests and legacies have already been distributed shall be enforced by the executor upon the order of this court".

 Appellants first assail the order made by the probate court on the ground that no jurisdiction existed in the court to determine that the sum of $4,000 did not belong to the decedent or his estate. Conceding it to be the rule that the superior court sitting in probate does not possess jurisdiction to try the question of title to property as between a repre-

sentative of the estate and strangers thereto, there is ample and creditable authority for the statement that the superior court, sitting in probate, is clothed with jurisdiction to determine title to claims when the representative of the estate asserts such title in his individual capacity as against the estate. (*Bauer* v. *Bauer,* 201 Cal. 267 [256 Pac. 820], and cases therein cited; *Estate of Kelpsch,* 203 Cal. 613 [265 Pac. 214]; *Estate of Roach,* 208 Cal. 394 [281 Pac. 607].) In the last-cited case we find the following: " . . . It is now well settled that the court, sitting in probate, is clothed with jurisdiction to hear and determine as against an administratrix the amount of money or property of the estate that has come into her hands, for the purpose of charging her therewith, and in determining that question to determine all issues necessarily incidental thereto. . . . (Citing cases.) . . . In the case of *Stevens* v. *Superior Court, supra,*" (155 Cal. 148 [99 Pac. 512]), "where an executor alleged that the testator, prior to death, had transferred certain money to him in his individual capacity, which he claimed as his individual property, it was held that the probate court had power to determine the title".

Obviously, therefore, in the instant case the probate court possessed jurisdiction to try the issue between the estate and the representative thereof as to whether the $4,000 delivered to the representative prior to the death of the testator was properly charged against such representative in his official capacity or was given to him in his personal capacity, and therefore did not constitute property belonging to the estate of the decedent.

█ It is next contended by appellants that the question as to whether the sum of $4,000 belongs to the estate and is distributable to the appellants is *res judicata.* This claim is based on the fact that in his first account current such executor charged himself with said sum; that he inventoried the same as an asset of the estate, and that such account was settled, allowed and approved by the court, as were subsequent current accounts. Also, that when appellants filed a petition for partial distribution, alleging that the $4,000 was part of the property bequeathed to them and Anna Larsen, the court, by ordering partial distribution in the sum of $15,000 to appellants, thereby impliedly found and determined that the $4,000 here in question was property of the estate. Ap-

pellant's contention with reference to the approval of the current accounts is answered by saying that none of these accounts was a final account, but all were in the nature of current accounts filed pursuant to section 921 of the Probate Code. ▮ In these proceedings it was only necessary for the court to examine into the accuracy of the account of the executor so far as the receipt and disbursement of money were concerned. The function of the court in these proceedings was simply to ascertain what money the executor had received and what proper disbursements of it he had made and to determine the balance of money in his hands. It is only upon a final account that the court must determine with what property in its entirety the executor is chargeable. Further, in neither the current accounts nor in the proceedings for partial distribution was the title to the $4,000 put in issue or determined. It requires no citation of authority for the statement that orders settling accounts or ordering distribution can only be conclusive· as to such items or issues as are included in the account or raised in connection with the petition for partial distribution. The doctrine of *res judicata* therefore has no application here.

▮ Appellants next assert that contrary to the findings of the trial court no trust was created by the delivery of the $4,000 and the letter accompanying it to Baly during the lifetime of the testator. With this claim of appellants we cannot agree, by reason of the factual situation involved in the transfer of the money and the reason and logic of the inferences to be deduced therefrom. Decedent made his will on April 22, 1925. In that testamentary document he made disposition of all moneys of which he might die possessed. On June 27, 1925, he borrowed the $4,000 from the bank for the ostensible purpose of doing certain construction work upon a parcel of real property which he owned. Three days thereafter, on June 30th, he entered into a contract for the doing of such construction work. Five days later he died. On June 29th, six days before his death, he placed the $4,000 in Baly's hands to use for the purposes set forth in his letter accompanying the transfer of the funds. Clearly the reason for the transfer of the $4,000 to Baly was the realization on the part of the testator that if he retained it in his possession it would be subject to the provisions of his will with reference to the disposition of all moneys in his possession

at the time of his death; so he transferred such money to Baly to be disbursed in furtherance of the purpose for which he borrowed it, to wit, the construction work upon his property. To us this appears clearly to indicate an intention on the part of the testator to place this $4,000 beyond the reach of the legatees mentioned in the third paragraph of his will. The only reasonable inference that can be drawn from this course of conduct on the part of the testator is that it was his intention to create a trust in connection with which he set forth the subject, purpose and beneficiary of the trust. ▇ (Civ. Code, secs. 2221 and 2222.) The fact that Baly inadvertently or mistakenly included the trust fund in his inventory as executor of the decedent's estate cannot and does not change or alter its character as established by the contract of the trustor when he created such trust. ▇ Knowledge on the part of the beneficiary or acceptance by him of the provisions of a trust is not determinative of whether a trust exists. This is especially true where, as here, the facts show that the intention of the deceased was to make a transfer of a present, immediate, and indefeasible title to the money for the benefit of the contractor, Hugo Johnson. The transfer was full and complete by the payment of the check to Baly, and passed from the donor the legal power, dominion over and title to the money, beyond his recall or control. ▇ It vested in the contractor, Johnson, an immediate title to the fund, with the right to reduce the same into his possession by performing the terms of his building contract with decedent and thereafter enforcing the obligation of Baly as trustee in accordance with the terms of the agreement establishing the trust. *Wade* v. *City and County Bank,* 25 Cal. App. 675 [145 Pac. 145], is not in point, because the trust alleged therein was for the benefit of the contracting building company, and there was no privity between the defendant and the materialmen who sought as plaintiffs therein to recover under the trust. In the case at bar, however, the trust was created for the benefit of the contractor Johnson and he could enforce its terms. The fact that the contractor Johnson named as beneficiary under the trust did not avail himself of his rights thereunder, but chose to file a claim in the estate, does not amount to an election by him not to take under the trust, because there is no inconsistency between such action and a reliance upon the benefit of the provisions of the

trust. (*National Bank of California* v. *Exchange Nat. Bank*, 186 Cal. 172, 180 [199 Pac. 1].) The finding of the probate court that the transfer of the $4,000 by decedent to Baly prior to the death of the former created a trust in favor of the contractor Johnson was therefore correct.

Finally, appellants contend that the legacy in favor of themselves and Anna Larsen is specific, and abates only after that in favor of Elsie Garrison. However, this question is not now properly before us, for the reason that in the order appealed from the probate court expressly withheld a decision in the matter of abatement and reserved determination thereof for subsequent action. As convincing proof that the court refrained from deciding the question of abatement one way or the other, we quote the following from the order which forms the basis of this appeal: " . . . provided, however, that the question as to whether the rights and interest of said John H. Garrison are prior to the rights and interest of said petitioners" (the appellants herein) "and the possible abatement of either has not been adjudicated in said order and has been expressly reserved for later adjudication herein."

For the reasons stated, the order appealed from is affirmed.

York, P. J., and Doran, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 14, 1940. Edmonds, J., and Carter, J., voted for a hearing.