JENNIE ARROTT ADAMS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 98106. Promulgated May 6, 1941.

*James M. Houston, Esq.*, for the petitioner.
*William A. Schmitt, Esq.*, for the respondent.

#### OPINION.

DISNEY: This proceeding involves an appeal from a determination of deficiencies in income tax for the taxable years 1934 and 1935 in

the amounts of $3,950.58 and $125.11, respectively. The question for determination is whether there should be included in petitioner's income certain proceeds of the sale of corporate stock by the trustees of a trust of which the petitioner was a beneficiary.

The petition assigned errors, in substance, as follows:

(a) The inclusion by the respondent in petitioner's taxable income for the year 1934 of any part of the proceeds from the sale of 6,800 shares of American Radiator & Standard Sanitary Corporation common stock, sold by the trustees of a trust of which petitioner is a life beneficiary.

(b) The inclusion in petitioner's taxable income for the year 1934 of the sum of $3,380.16, as being income from the aforementioned trust, distributable to petitioner as a life tenant thereof, in the year 1934.

(c) The inclusion in petitioner's taxable income for the year 1935 of any part of the proceeds from the sale of 400 shares of American Radiator & Standard Sanitary Corporation common stock sold by the trustees, for the petitioner.

(d) The inclusion in petitioner's taxable income for the year 1935 of the sum of $199.92 as being income from the aforementioned trust, distributable to petitioner as a life tenant thereof in the year 1935.

The facts stipulated, including the joint exhibits, are adopted as a part of our findings of fact. The stipulated facts, so far as pertinent to consideration of the issues, may be summarized as follows:

The petitioner is a widow and resides at 940 Beaver Street, Sewickley, Pennsylvania. Petitioner's returns for the calendar years 1934 and 1935 were filed with the collector of internal revenue at Pittsburgh, Pennsylvania. Her books were kept and her returns made for the taxable years involved on the basis of cash receipts and disbursements. Her father, James W. Arrott, died December 29, 1902, leaving a last will and testament dated July 10, 1902, which was duly probated before the Register of Wills of Allegheny County, Pennsylvania.

James W. Arrott, the testator, left surviving him as his next of kin his widow, four sons, and two daughters and appointed his wife and sons executors and trustees under his will. Subsequently, the Union Trust Co. of Pittsburgh, Pennsylvania, and two of his sons became the trustees of the trust, one son later resigning. The testator in his will made separate but identical trust provisions for his two daughters, Jennie Arrott Adams, petitioner herein, and Isabel Arrott Rider, mentioned in the Orphans' Court proceedings of Allegheny County, Pennsylvania, hereinafter described. The seventh paragraph of the will of the testator provided in part:

One of said shares, less the sum of Ten Thousand ($10,000.00) Dollars, I give, devise and bequeath to my executors hereinafter named, the survivor and successor of them, IN TRUST, for my daughter, JENNIE, to invest the principal in good and approved interest-bearing securities and pay over the interest to her,

my said daughter, as same is got in and received, for and during the term of her natural life, said interest or income not to be liable or subject in any manner to attachment or seizure for any debt or debts of her, my said daughter, nor to be assigned, transferred, pledged or parted with by way of anticipation, and upon her death to divide the said share equally among any children of hers, should she die leaving children who may then survive her, the issue of any deceased child to represent and take the share of such deceased child; and in the event of her death without leaving child or children or the issue of any deceased child, then surviving her, then to divide the said corpus or principal equally among her then surviving brothers and sisters and the issue of any who may then be deceased, such issue also to represent and take the share of their deceased parent.

An identical provision was made for the decedent's daughter, Isabel Arrott Rider. The trustees received the stock in 1910. Subsequently a stock dividend of 100 percent in 1920, of 40 percent in 1922, and of 25 percent in 1925, and a change of corporate name and structure of the Standard Sanitary Manufacturing Co., resulted in the trustees holding for petitioner's trust a total of 52,569 shares of American Radiator & Standard Sanitary Corporation stock, by 1929.

About October 1, 1925, the trustees for petitioner filed their second trustees' account in the Orphans' Court of Allegheny County, Pennsylvania. The account covered the administration of the trust for the period June 13, 1916, to approximately the date of its filing. The account contained, under the heading "Principal—Receipts", entries relating to the 100 percent stock dividend received in 1920 and the 40 percent stock dividend received in 1922, but indicated the value by zero marks; and contained no entry as to the 25 percent stock dividend received in 1925, though the number of shares of stock received in 1925 was included in the number of shares shown in the "Principal" balance. An audit statement as to the account, also filed, recited, among other things, that the income from the trust during the period covered by the account, except the balance shown as on hand, had been paid to the beneficiary, the petitioner herein, and that "There is no distribution to be made on this accounting either of principal or income, this account being filed for the purpose of having the administration of this trust for the period covered in said account confirmed by the Court. There are no questions raised in connection with the administration of this trust"; also, "The Court is respectfully requested to decree the balance both of income and principal as shown in the account back to the accountant for the purposes specified in the will of James W. Arrott, deceased." The account was confirmed absolutely by a decree of the Orphans' Court dated March 2, 1926, and the principal balance shown by the account, including stock dividends of 1920, 1922, and 1925, "was awarded back to the trustees."

The record at the time when the account was presented to the court for audit contains, among other recitations, the following:

By the Court: Oughtn't that interest to be represented? . . . . Oughtn't you to do that? This is a large amount of money. I have not stopped to look at the provisions of Mr. Arrott's will or where this goes.

The decree recited that the funds in the hands of the accountant be paid in accordance with the schedule of distribution attached, and the schedule recited:

Balance for distribution
To James W. Arrott, Jr., Albert E. Arrott and The Union Trust Co. of Pittsburgh, Trustees in trust for Jennie Arrott Adams, for the purposes specified in Item 7 of will, said balance, viz.

| | |
|---|---|
| Corpus, Cash & Securities, per Account | $180, 496. 63 |
| Income, Cash | 2, 107. 57 |

Another account and audit statement, with recitations the same as in the previous account and audit of 1925, were filed by the trustees for the petitioner herein at the June term, 1932, and the account was confirmed absolutely by a decree of the Orphans' Court, dated July 21, 1932, and the principal balance shown by the account, including the shares representing stock dividends, was "again awarded back to the trustees", with the same recitations as contained in the decree of March 2, 1926.

It is stipulated:

During the year 1934 and in the first two months of the year 1935, the trustees for Jennie Arrott Adams sold a total of 7200 shares of American Radiator and Standard Sanitary Corporation stock. The proceeds of these sales were retained in the corpus of the trust in an account which was filed in the Orphans' Court at No. 274 June Term, 1935. The account was duly audited and confirmed absolutely by the court in a decree dated December 27, 1935, which awarded back to the trustees as corpus the entire proceeds of the stock sales aforesaid. Petitioner has never received nor has there ever been credited to her any portion of the proceeds of said sales.

In accordance with the provisions of the Pennsylvania Fiduciaries Act and the rules of the Orphans' Court of Allegheny County, Petitioner received notice of the filing of the accounts of her trustees filed in 1925, 1932 and 1935, together with copies of said accounts. At each accounting a guardian or trustee ad litem was appointed by the Orphans' Court to represent possible unborn persons contingently interested in the remainder. In each case a report of the guardian or trustee ad litem, approving the account, was filed with the court.

The trustees for Jennie Arrott Adams filed income tax returns for the years 1934 and 1935 and paid a tax on the gain realized by the sales of American Radiator and Standard Sanitary Corporation shares sold in the years 1934 and 1935.

The trustees of petitioner's sister, Isabel Arrott Rider, treated the receipt of stock dividends as additional corpus receipts, as did the trustees of petitioner. Accounts by the Rider trustees, showing stock dividends as corpus receipts in 1925 and 1932, were filed and were confirmed absolutely as were those of petitioner's trustees. In 1935, the Rider trustees filed an account showing the sale of 7,200 shares

of American Radiator & Standard Sanitary Corporation stock in 1934 and the first two months of 1935. To this account Mrs. Rider filed exceptions and also filed a petition to review the prior accounts and decrees confirming the same in 1925 and 1932. The exceptions and bill of review sought to apportion the stock dividends of 1920, 1922, and 1925 received by the trustees on the proceeds of their sale and also the proceeds of the sale of rights to subscribe to additional shares which were received and sold by her trustees in 1929. She was joined in her exceptions and petition by her two sons, remaindermen of her trust.

The Orphans' Court of Allegheny County appointed a guardian or trustee ad litem to represent the interests of possible unborn remaindermen which would be adversely affected by sustaining the exceptions and granting the prayers of the petition for review of the prior accounts. The guardian or trustee ad litem filed a report opposing the contentions of Mrs. Rider and contested her right to a review and apportionment in a hearing before the Orphans' Court. Reports were prepared setting forth an apportionment of stock dividends and stock rights to which all parties agreed, provided the Orphans' Court should decide that Mrs. Rider was entitled to an apportionment.

On the basis of the above reports and the testimony adduced at the hearing in support of the exceptions and petition for review, the Orphans' Court in its opinion stated, in part, that the Rider trust was a spendthrift trust which imposed special duties upon the trustees to care for the interests of Mrs. Rider and that it was admitted by the trust officer that the trustees did not seek the advice of counsel in giving the stock dividends and the other amounts mentioned to corpus, but that the trustees merely followed the usual practice of the trust company adopted in such cases.

The Orphans' Court, in sum, held that in the adjudication of the two accounts sought to be reviewed by Mrs. Rider an injustice had inadvertently been done her and that "the allocations by the trustees of the stock dividends and the proceeds of sale of stock and rights, to corpus, instead of to income, were at least equivalent to fraud which entitles her to relief, and that the prayer of the petition should be granted."

The petitioner herein filed no action and did not receive an apportionment of the stocks received as dividends or the proceeds of sale thereof, as did her sister, through her exceptions and petition for review. The status remained in respect to her as reflected by the accounts originally approved in the Orphans' Court, whereby the trustees retained the stock, stock dividends, and proceeds of the sales.

In addition to the stipulated facts above epitomized, we find:

The same officer of the Union Trust Co., cotrustee, handled the affairs of both the Rider and Adams trusts. The cotrustee did not discuss with the petitioner the case of Mrs. Rider pending in 1935 in the Orphans' Court, nor did the cotrustee discuss with petitioner the question of apportionment of corpus and income of her trust estate.

The reason the trustees made no apportionment of stock dividends as income to the life tenants in the Rider and Adams trusts, but treated all dividends as corpus, was, as stated in the testimony of the trust officer in this proceeding, because:

They considered that as long as they kept them in the principal account and they remained in the possession of the trustee, that when it was ascertained as to what portions, if any, would properly be distributable to a life tenant, they would have it and they could make that distribution. In other words, the general policy was as long as they had it in their own possession that no one, including themselves, could be hurt, whereas if they attempted an apportionment and paid it out to a life tenant—and that should later prove to be erroneous, they would [not] have it under their control to rectify the mistake.

That was the reason behind the general policy of the trustee, and was followed in the Jennie Arrott Adams case.

The same trust officer testified in the matter of the audit of the trustees' account before the Orphans' Court on November 18, 1925.

The deficiency notice for the taxable years shows that the total shares sold in 1934 were 6,800, and the number apportionable to the life beneficiary, the petitioner, was 4,788. The profit from the sale thereof, $58,278.17, was held by the respondent to be taxable to the petitioner to the extent of 30 percent thereof, or $17,483.45, which was added to her income for 1934. Of the 400 shares sold in 1935, respondent determined that 281 were apportionable to petitioner and that 30 percent of the gain of $3,168, or $950.40, was taxable to her.

In the deficiency notice the respondent states that 2,012 shares of the 6,800 above mentioned were not included in his computation of gain or profit above set forth, but that the court in the Rider case held that certain accumulated income accrued to the life beneficiary from the 2,012 shares and that the amount so determined by the court was $3,380.16 and the same amount the respondent herein held represented distributable taxable income to petitioner for 1934 and he so included it.

With respect to 119 shares—the difference between the 400 shares reported as sold in 1935 and the 281 apportioned to the petitioner—the respondent states that in accordance with the court's decision in the Rider case he determined that the income arising from the 119 shares of stock was $199.92, and he included it in taxable income of petitioner for the year 1935:

The Orphans' Court in the Rider case did not decide that Mrs. Rider was entitled as life beneficiary to said sums of $3,380.16 and $199.92 as representing distributable accumulated taxable income.

Under the above facts, should the proceeds of the sales of stock (to the extent of 30 percent as determined by the Commissioner) be included in petitioner's income for the taxable years, under section 162 (b) of the Revenue Act of 1934?[1] The answer depends upon whether the petitioner, in the taxable years, had the right to a portion of the sales proceeds as income as life tenant, or whether the stocks sold were corpus of the trust. The fact that she did not demand or actually receive the proceeds does not relieve her of taxability therefor; if she had a right to receive it, that fact controls. *Blair* v. *Commissioner*, 300 U. S. 5; *Freuler* v. *Helvering*, 291 U. S. 35; *Mary Clark de Brabant*, 34 B. T. A. 951; affd., 90 Fed. (2d) 433; *Malcolm* v. *Commissioner*, 97 Fed. (2d) 381.

The record shows that the number of shares in the trust of petitioner had largely increased because of stock dividends received. Under Pennsylvania law as to stock dividends received by trustees where there are remaindermen and a life beneficiary of the trust:

> Extraordinary dividends, commonly called stock dividends, are distributed and apportioned as follows: The presumption is that an extraordinary stock dividend is from earnings and belongs to the life tenant. * * *
>
> In the distribution of a stock dividend, the "intact value" must be preserved. When it appears that the distribution of a stock dividend to the life tenant will impair the intact value of the trust estate by reducing it, then there must be an apportionment between the life tenant and the remainderman, so as to preserve the intact value of the corpus of the estate, plus any increase in that value through share purchases, or from contributed surplus or any proper capital increase, and less any decrease for capital losses. [*In re Waterhouse's Estate*, 308 Pa. 422; 162 Atl. 295.]

The existence of the Pennsylvania apportionment rule was recognized by this Board in *Anna M. Chambers et al., Trustees*, 33 B. T. A. 1125, and in *Anna M. Chambers et al., Trustees*, 29 B. T. A. 971; affd., 77 Fed. (2d) 95.

That a portion of the stock dividends received by the trustees in 1920, 1922, and 1925 should under the "Pennsylvania Rule" have been apportioned to the petitioner as income instead of being re-

---

[1] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\* \* \* \* \* \* \*

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year.

tained by the trustees as principal seems not to be questioned by the petitioner. We find that the petitioner under the Pennsylvania law was so entitled. The petitioner's position is in effect that the Orphans' Court had more than five years prior to the taxable years adjudicated that the dividend stock belonged to corpus and that under section 843, Purdon's Pennsylvania Statutes, such adjudication was conclusive in the absence of fraud; that no fraud appears; that under *Freuler* v. *Helvering*, *supra*, and other cases to the same effect, the adjudication of the Orphans' Court is conclusive; that therefore the petitioner had no right in the taxable years to any apportionment of the sales proceeds and therefore no duty of paying income tax thereon. The respondent's position, in substance, is that the petitioner had been entitled to apportionment under the "Pennsylvania Rule," that her trust was identical with that of her sister, Mrs. Rider, that in the case of her sister the Orphans' Court, upon exceptions and bill of review filed by the sister, held that the sister was entitled to apportionment, that the petitioner is in the same position and her inaction or the failure of the trustees to treat her trust property similarly did not affect her present right to receive said income, and that, even if under the five-year statute of limitations her remedy against the adjudications is gone, her rights remain and she is therefore taxable.

We think we should not give to the adjudication by the Orphans' Court in favor of petitioner's sister the effect for which respondent argues. It is clearly not *res judicata* in this matter, since it was *res inter alios acta* and the respondent does not in fact contend that it is otherwise, but seems to take the view that, since the two trusts are identical, it follows that the Orphans' Court, if the petitioner had applied for relief, would have necessarily rendered the same judgment as in the case of the petitioner's sister. We think it obvious that such result does not follow. The principal remaindermen in the Rider case were Mrs. Rider's two sons, her only children, and they joined her in the request for relief. We can not assume that here, where the record shows nothing as to the remaindermen, there would not have been a real contest in petitioner's matter or that the result would have been the same as in the case of her sister.

The question for our determination, therefore, is whether the record here shows such facts as would have given the petitioner in the taxable years a right to have set aside the adjudication by the Orphans' Court in 1926, upon an audit filed in 1925. The adjudications in 1932 and 1935 do not require attention, for they both come within five years prior to the taxable years and, under section 843, Purdon's Pennsylvania Statutes, review thereof by the Orphans' Court was a matter of right, upon application within five years. *Kinter's Appeal*, 62 Pa. 318; *Meckel's Appeal*, 112 Pa. 554; 4 Atl. 447. It is plain, however,

that if the adjudication in 1926, more than five years before the taxable years, which decreed the stock dividends as corpus to the trustees, could not have been set aside by the petitioner, she could not have established a taxable right to a portion of the stock dividends, even if she had, as did her sister, filed exceptions to the account filed in 1935 and as to that accounting had been successful. Thus it is seen that her rights in the taxable years depend upon the effect of the adjudication in 1926.

*Freuler* v. *Helvering, supra,* holds that an order of a state court as to whether there is distributable income or trust corpus, as between trust and beneficiary, establishes the law in that respect "until reversed or overruled." Section 219 of the Revenue Act of 1921, in effect the same as section 162 (b) here involved, was there being interpreted. To the same general effect is *Blair* v. *Commissioner, supra; Susan B. Armstrong,* 38 B. T. A. 658; *Letts* v. *Commissioner,* 84 Fed. (2d) 760; and *Helvering* v. *Rhodes,* 117 Fed. (2d) 509, affirming 41 B. T. A. 62.

*Freuler* v. *Helvering, supra,* however, seems to make an exception to the general rule above stated in case the proceeding in the state court "was a collusive one—collusive in the sense that all the parties joined in a submission of the issues and sought a decision which would adversely affect the Government's right to additional income tax." There is no contention herein that the adjudications before the Orphans' Court were collusive with intent to deprive the Government of income tax.

It is necessary to consider here, however, the question of fraud, since the respondent in substance argues that the petitioner should be held to be in the same position as her sister, Mrs. Rider, and that Mrs. Rider in 1935 succeeded in setting aside the adjudication in 1926 on the ground of fraud. However, if we assume that fraud, as well as collusion, constitutes an exception to the rule of the binding effect of adjudication as laid down in *Freuler* v. *Helvering,* we must still answer the question as to whether the facts here disclose fraud such as would have given the petitioner the right in the taxable years to set aside the adjudication of 1926. After careful examination of all the facts appearing in the record, we are of the opinion that the facts available for attack by the petitioner in the taxable years did not comprise fraud of the nature necessary to set aside the earlier adjudication. The fraud necessary to constitute sufficient reason for vacating a judgment "must be extrinsic and collateral to the matter tried, and not a matter which was actually or potentially in issue in the action, unless the interposition of such defense was prevented by fraud, accident, or the act of the opposite party * * *." 34 C. J. 280 (citing many cases)—a fair statement of the body of law on the subject, in our opinion. We think that although, as found by the Orphans' Court in the proceeding instituted by petitioner's sister, there was in these

matters fraud in the violation of the duty of a trustee to make full disclosure to *cestui que trust*, and in the representations and statements filed in the accounting in 1925, nevertheless there was not fraud "extrinsic and collateral to the matter tried", but that it was "actually or potentially in issue" in the proceeding before the Orphans' Court. We therefore conclude and hold that the petitioner did not have a right on the facts herein disclosed to vacate the adjudication made in 1926 and therefore that the respondent erred in including in her income a proportion of the proceeds of sale of stock dividends, as set forth in the deficiency notice. We disagree with the respondent's idea that the petitioner could have a right to the income though her remedy was gone. The old maxim that there is no wrong without a remedy indicates that if remedy has been lost, as here, by passage of time it can not be said that the affected party has a right.

We have above found as fact that the Orphans' Court did not in the Rider case decide that Mrs. Rider was entitled as life beneficiary to $3,380.16, also $199.92, as accumulated taxable income. That is the only reason stated for including the amounts in income. The dividend stock involved was covered by the adjudication in 1926; therefore our conclusions set forth above cover these amounts also. We hold on this issue also, that the respondent erred in including such amounts in petitioner's income.

*Decision of no deficiency will be entered.*