Josephine Towne Clegg, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.*

Arline Towne Hotle, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

William Stark Towne, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Lindsay Towne Clegg, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 105519, 105549, 105550, 105551. Promulgated October 23, 1942.

---

* Prior to October 22, 1942, this report was approved for promulgation.

*Scott C. Lambert, Esq.*, for the petitioners.
*Harry R. Horrow, Esq.*, for the respondent.

OPINION.

Arnold: The question to be determined is whether the amounts paid by the trustees of the trusts herein for California state income taxes and Federal documentary transfer taxes are chargeable against corpus, as determined by respondent, or against ordinary income, as contended by petitioners. If chargeable against corpus, the income distributable currently by the trustees to the beneficiary of each trust is correspondingly increased and the beneficiary is taxable thereon under section 162 (b) of the Revenue Act of 1938.

The parties agree that under the provisions of section 162 (b) each beneficiary is taxable upon the amount of income to be distributed currently and that the test of taxability to each beneficiary is not the receipt of the income but the present right to receive it, *Freuler* v. *Helvering*, 291 U. S. 35, and that the amount of income currently distributable to each beneficiary is to be determined by the laws of California. *Freuler* v. *Helvering, supra; Letts* v. *Commissioner*, 84 Fed. (2d) 760; *Commissioner* v. *Dean*, 102 Fed. (2d) 699; *Plunkett* v. *Commissioner*, 118 Fed. (2d) 644; *Estate of George H. Balzereit*, 46 B. T. A. 959; *Estate of Cassius E. Wakefield*, 44 B. T. A. 677; and *Estate of Frederick R. Shepherd*, 39 B. T. A. 38.

Upon a supplemental stipulation of facts, the petitioners introduced in evidence trustees' accounts and decrees of the Superior Court of California approving the same for all trusts except the trust under the will of William Pierce Johnson for the benefit of Josephine Towne Clegg. They contend that the tax payments in controversy are shown in such accounts as disbursements charged against net income distributable to the beneficiary and that, since the court approved the act of the trustees in charging the taxes involved against such income, such decrees are conclusive herein.

The respondent, as to such accounts and decrees, contends (1) that the question whether state income taxes and Federal transfer taxes were chargeable to corpus or ordinary income was not presented, considered, or decided by the Superior Court of California and its decree, therefore, would not be binding upon California courts on such question and should not bind the Board, and (2) that, if it be considered that the court determined such taxes were chargeable to ordinary income, then its decrees should not be followed as contrary to the law of the State of California as enunciated by its supreme court, the Supreme Court of California having held that regular or periodically recurring expenses arising from the administration or ordinary management of a trust are paid out of income, while extraordinary and unusual expenses are chargeable against the capital, citing *In re Dare's Estate*, 235 Pac. 725; 196 Cal. 29; *In re Gartenlaub's Estate*, 198 Pac. 209; 185 Cal. 648.

As to respondent's first contention, we think it is sufficient to say that the expense items for state income taxes and Federal transfer taxes were items entering into the computation whereby the superior court determined the amount of income distributable to the beneficiary. The question before us was therefore presented and considered by that court. Whether the trustees in making their accounts and that court properly or improperly considered such expense items chargeable to ordinary income is not for us to say if the orders and decrees of the court are conclusive and binding on us as to the amount of income distributable to the beneficiaries. The items were set forth in the accounts and it appears that such items, together with other disbursements, were charged against ordinary income, thus reducing the amount distributable to the beneficiary.

The present right of a beneficiary of a testamentary trust to receive income therefrom is a property right and the nature and extent of that interest is determinable by local laws, the decision of the state court being final. *Blair* v. *Commissioner*, 300 U. S. 5. "State law creates legal interests and rights. The Federal revenue acts designate what interests or rights, so created, shall be taxed." *Morgan* v. *Commissioner*, 309 U. S. 78.

Section 1120 of the Probate Code of California expressly confers jurisdiction upon the court in matters pertaining to testamentary trusts. See *McLaughlin* v. *Security-First Nat. Bank*, 67 Pac. (2d) 726; *Ringwalt* v. *Bank of America Nat. Trust & Savings Assn.*, 45 Pac. (2d) 967; *Security-First Nat. Bank of Los Angeles* v. *Superior Court*, 37 Pac. (2d) 69. The Court in *Freuler* v. *Helvering, supra*, relied upon by both respondent and petitioners, referring to a decree of the same court which rendered the decrees herein, viz., the Superior Court in and for the City and County of San Francisco, California, stated: "* * * the decision of that court, until reversed or overruled, establishes the law of California respecting distribution of the trust estate. * * *"

Furthermore, section 1123 of the Probate Code of California provides as follows:

A decree rendered under the provisions of this chapter, [entitled "Administration of Trusts"] when it becomes final, shall be conclusive upon all persons in interest, whether or not they are in being.

That the orders and decrees of the court having jurisdiction of the trust estate, in the absence of fraud, are conclusive and binding on the question of the amount of trust income currently distributable to trust beneficiaries in the determination of tax liability under the Internal Revenue Act, see also *Letts* v. *Commissioner, supra; Commissioner* v. *Dean, supra; Plunkett* v. *Commissioner, supra; Estate of George M. Balcereit, supra. In re Hoveland's Estate*, 101 Pac. (2d)

500, cited by respondent in support of his argument that the decrees of the court are not binding, is distinguishable and not controlling herein. In stating that the function of the superior court was simply to ascertain what money the executor had received and what proper disbursements he had made and to determine the balance of money on hand, the court was referring to accounts in the nature of current accounts filed by an executor under section 921 of the Probate Code of California. That case did not involve accounts filed by trustees under section 1120 or a decree approving same, which under section 1123 is expressly made conclusive upon all parties in interest.

Since the decrees of the superior court are conclusive of the issues involved herein, it follows, therefore, that the respondent's determination of the amount currently distributable by including therein the items of California income tax and/or Federal transfer tax in each of the trusts under the will of William Pierce Johnson, deceased, for the benefit of Arline Towne Hotle, William Stark Towne, and Lindsay Towne Clegg, and each of the trusts under the will of Florence Lindsay Johnson, deceased, for the benefit of Josephine Towne Clegg, Arline Towne Hotle, William Stark Towne, and Lindsay Towne Clegg, must be disapproved.

No trustees' account and decree thereon was introduced in evidence with respect to the will of William Pierce Johnson for the benefit of Josephine Towne Clegg. It is argued by petitioners' counsel that the approval of the accounts submitted with respect to the other trusts is necessarily determinative of the rights of Josephine Towne Clegg in such trust, since all of the trusts are identical in terms. See *Jennie Arrott Adams*, 44 B. T. A. 408, 415. The will provided that after the beneficiary reached majority the trustees were to pay her "the whole of the net income" of the trust fund. The will contains no provisions as to how the net income was to be determined. It is argued by counsel for petitioners that, since the trustees were empowered to dispose of the trust property and reinvest the same, the trustors contemplated numerous sales of the trust property and resulting tax expense.

The general rule in California is that, where the trust instrument is silent as to what expenses are to be charged against income, ordinary and regular or periodically recurring expenses incurred in the administration or management of a trust are usually payable out of trust income, while extraordinary and unusual expenses are payable out of capital or principal. *In re Kruce's Estate*, 51 Pac. (2d) 1174; 10 Cal. App. (2d) 426; *In re Dare's Estate, supra;* and *In re Gartenlaub's Estate, supra.* However, there are exceptions to this rule. It is not a hard and fast rule. *In re Oliver's Estate*, 51 Pac. (2d) 1118; 10 Cal. App. (2d) 336; sec. 840, California Civil Code.[1]

[1] Sec. 840. Duties of Tenant for Life. The owner of a life estate must keep the buildings and fences in repair from ordinary waste, and must pay the taxes and other annual charges, and a just proportion of extraordinary assessments benefiting the whole inheritance.

In *Dare's Estate, supra,* cited by respondent, a portion of the assets of the trust involved consisted of a second mortgage on a tract of land subject to a first mortgage upon which certain overdue interest and taxes were unpaid. To protect the trust estate the trustee entered into an arrangement with the owner of the land to convey the land to the trust, subject to the first mortgage and overdue interest and delinquent taxes. The trustee paid such interest and taxes and also paid the war stamps on the deed of conveyance because the owner of the land or grantor was "broke." The delinquent taxes and war stamps were under the circumstances capital expenditures or a part of the cost of the property acquired and hence were properly classifiable as extraordinary expenses. The expenditures were, as stated by the court, for the benefit of the corpus of the estate and the probable enhancement in value of the corpus of the estate itself. In *Gartenlaub's Estate, supra,* also cited by respondent, litigation arose upon the settling of the trustees' accounts and concerned the interpretation of the instrument creating the trust and the proper mode of executing the trust. The Superior Court of the City and County of San Francisco allowed the trustee $500 for attorney's services rendered in the litigation as well as an additional allowance for so-called ordinary services of attorneys in connection with the preparation and presentation of the annual account of the trustee, both of which were ordered paid out of the income of the trust. With respect to the $500 the Supreme Court of California held that, where it becomes necessary to remove a doubt or ambiguity so as to insure the correct administration of a trust, the expense thereof is an extraordinary expense which should be borne by all parties and, if paid from principal, the life tenant as well as the remainderman shares the burden, for in that event the life tenant is deprived of the interest on the sum taken from principal. The court also held that a premium paid by the trustee on the purchase of certain bonds was properly chargeable against income, otherwise the life tenant would in effect receive a part of the principal of the trust. These cases are distinguishable from these proceedings on the facts. The income upon which the 1938 income tax was levied consisted of capital gains of $31,692.75 realized on the sale in 1937 of securities forming a part of the corpus of the trust and dividend and interest income of $21,429.53 accumulated by the trustees during the period of the minority of Josephine Towne Clegg, which income was reported as taxable to the trustees in their state income tax return for the calendar year 1937. Income taxes are an annual recurring expense and with respect to trust income must be paid by the trustee and/or beneficiary.

Josephine Towne Clegg was not only entitled to the income from the trust but to the trust corpus as well, possession only of the corpus being deferred until she arrived at the age of thirty, when the trust was to terminate and the corpus was to be delivered to her. It is true

there was a provision over of the trust corpus if she died before reaching the age of thirty, but, as matters stood in the taxable year, she was not only the income beneficiary but the beneficiary of the corpus as well. Whatever expense, therefore, was necessary to preserve the corpus was for her benefit from the standpoint of both income and trust corpus. That the payment of the items in controversy was necessary to preserve for her both the income and the corpus can not be questioned.

Josephine Towne Clegg reached majority on October 19, 1937. As far as the record shows she has made no objection to the payment of the state income taxes and Federal stamp taxes out of the trust income. Similar items were paid out of the income of the trust created for her benefit under the will of her grandmother. An account was filed by the trustees in which the trustees charged California income tax in the amount of $135.17 and Federal documentary transfer stamp taxes in the amount of $24.81 to 1938 income. This account was approved by the Superior Court December 30, 1941, or four years after Josephine Towne Clegg attained majority, and no objection was made thereto by her. The items involved were regarded by both the trustees and the beneficiary as ordinary expenses chargeable against income.

There is no reason for according the William Pierce Johnson trust for Josephine Towne Clegg different treatment than that given the other trusts where the identical question is involved. Under all the circumstances, we are of the opinion that the respondent erred in increasing the amount of 1938 distributable income from the trust involved reported by Josephine Towne Clegg by the amount of $2.656.74, California income taxes, and by the amount of $75.42, Federal documentary transfer stamp taxes.

*Decisions will be entered for the petitioners.*